B. and S. JEWETT *against* PALMER and MAY.

To support the plea of a *bona fide* purchaser, without notice, the defendant must aver and prove, not only that he had no notice of the plaintiff's rights before his purchase, but that he had *actually paid the purchase money* before such notice. Though he *secured* the purchase money, yet if it was not, in fact, *paid* before notice, it will not be sufficient to maintain his plea.

THE bill, filed *March* 4th, 1819, stated, that the plaintiffs were in possession of a farm in the county of *Genesee*, containing 157 acres, under a contract for the purchase thereof, in *October*, 1816, when they sold the farm to the defendant, *Isaac Palmer*, at ten dollars per acre. Twenty-five dollars, part of the purchase money, was paid down; 400 dollars was to be paid on the 1st of *February*, 1817; and the residue, being 1200 dollars, in two equal payments, in 1819 and 1821, with interest. That in *February*, 1817, *P.* refused to pay the 400 dollars then due, unless the plaintiffs assigned the original contract, and deposited the same with one *B.*, to remain until both parties should call for it, in order to obtain a deed, upon which *P.* was to execute a mortgage to the plaintiffs, to secure such part of the purchase money as remained due. Upon this arrangement, *P.* paid the 400 dollars, and interest, except 50 dollars due on the original contract, and which *P.* agreed to pay. That in *February*, 1819, the plaintiffs called on *P.* for another payment, which he refused, saying that he had obtained a deed for the farm from the original owner, who had contracted with the plaintiffs. The plaintiffs alleged, that the defendant, *P.*, had obtained the deed by false and fraudulent devices, without the knowledge or consent of the plaintiffs, and wholly refused to pay to them what was due on their agreement; and that they

*February 8th.*

had just ground to apprehend, that *P.* intended to sell and convey the farm, and to defraud the plaintiffs of the money due for the price thereof. *A subpœna and injunction* were issued on the filing of the bill, which were personally served on *P.*, the 9th of *March,* 1819.

*Palmer* having suggested in his answer, that he had given a deed to *Rufus May,* before the subpœna and injunction were served upon him, the plaintiffs amended their bill, by making *May* a party defendant, and alleging the time of filing the bill, and of issuing and service of the subpœna and injunction. It appeared, that there was a deed from *P.* to *M.* of the land, dated *March* 1st, 1819, and acknowledged and recorded the 1st of *April,* 1819; and it was alleged, that the deed was not, in fact, executed and delivered until about the 23d of *March,* 1819, and was made for the purpose of defeating the rights of the plaintiffs, and that *P.* still remained in possession of the farm.

The defendant, *P.*, in his answer, stated, that he sold and conveyed the farm to *M. about the 1st of March,* for 1400 dollars. The defendant, *M.*, in his answer, stated, that he had no knowledge, at or before the purchase of the farm, of the contract, or any difficulty concerning it, between the plaintiffs and *P.* That in *February,* 1819, *P.*, who was his son-in-law, told him that he must sell his farm to pay his debts, and offered it to *M.* That, afterwards, on the 1st of *March,* 1819, confiding in the representations of *P.* as to title, &c., he took a deed from him. That at the time of the conveyance, or *within a few days thereafter,* he paid *P.* in cash 100 dollars, and gave him his promissory note for 527 dollars and 72 cents, which he afterwards paid, in 1820; and the residue of the purchase money was paid in six or seven promissory notes, of one *William Eaton,* which *M.* transferred to *P.*, amounting to 772 dollars and 26 cents.

Much evidence was taken on both sides, which was contradictory; and as a feigned issue was awarded, to ascer-

tain the material facts, it is unnecessary to state the testimony.

*N. Williams,* for the plaintiffs.

*Gold* and *Sill,* for the defendants.

THE CHANCELLOR. There does not appear to be much doubt, as to the fraudulent intentions of the defendant, *P.;* and there would be no difficulty as to relief against him. But the object of the suit, is to preserve and enforce the claim of the plaintiffs to a lien, for the purchase money, upon the land, which they contracted to sell to the defendant, *P.;* and the defendant, *M.,* comes forward, in opposition to that lien, in the character of a *bona fide* purchaser, for a valuable consideration, without notice of the plaintiff's claim, before the pendency of this suit. The real controversy is, whether the defendant, *M.,* be entitled to sustain that character.

There is, probably, due to the plaintiffs about 1100 dollars, with interest from the 1st of *February,* 1817; and a reference will be necessary to ascertain the precise amount.

The defendant, *May,* avers, that the deed to him was executed and delivered on the 1st day of *March,* 1819; and the subpœna and injunction in the case, were served on the 9th of *March,* 1819. Part of the consideration for the purchase by *May,* is averred to have been paid at the time of the execution and delivery of the deed, by the transfer and delivery to *Palmer* of several promissory notes, given by *William Eaton* to *May,* and which are alleged to have been good and valid. But another part of the consideration, viz. 100 dollars, was not paid until the 20th of *March,* 1819; and 527 dollars and 72 cents, not until the autumn of 1820. These payments were made, not only after the pendency of the suit, which was notice in law, but after actual notice of the claim of the plaintiffs must be

taken to have been received.   They were, therefore, pay-ments made by the defendant, *M.*, in his own wrong, and his character of a purchaser will not protect him.   A plea of a purchase for a valuable consideration, without notice, must be *with the money actually paid ;* or else, according to Lord *Hardwicke*, you are not hurt.   The averment must be, not only that the purchaser had not notice, at or before the time of the execution of the deeds, but that the purchase money was paid before notice.   There must not only be a denial of notice before the purchase, but a denial of notice before payment of the money.   (*Harrison* v. *Southcote*, 1 *Atk*. 538.   *Story* v. *Lord Windsor*, 2 *Atk*. 630.)   Even if the purchase money be secured to be paid, yet if it be not in fact paid, before notice, the plea of a purchase for a va-luable consideration, will be overruled.   (*Hardingham* v. *Nicholls*, 3 *Atk*. 304.)

Whether the deed to *May* was actually and truly execu-ted and delivered, and the notes of *Eaton* assigned in part payment, on the 1st of *March*, 1819, or at a subsequent day in *March*, after the service of the subpœna and injunc-tion, is a point greatly litigated ; and there is much contra-diction in the testimony ; and the character of some of the witnesses has been sharply assailed and defended.   It is one of those questions of fact, involved in so much doubt, that a feigned issue, to have that fact settled by a jury, seems to be dictated by sound discretion.

I shall, accordingly, award a feigned issue to the county of *Madison*, to ascertain the fact, whether the deed from *Palmer* to *May* was executed and delivered on the 1st day of *March*, 1819, or at some other, and what subsequent day in that month ; and I shall reserve the question, whe-ther the plaintiffs have a lien on the lands, for the residue of the purchase money, and also the question of costs, and all other questions, until the issue shall have been tried, and the cause brought to a further hearing thereon.

Decree accordingly.