(8 App. Div. 567)

### DUFFUS v. HOWARD FURNACE CO.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1896.)

1. FIXTURES—BETWEEN MORTGAGEE AND SELLER.

A hot-air furnace, set up in the cellar of a house on bricks placed on the bottom of the cellar, with a smoke pipe extending into the chimney and hot-air pipes extending through the house, which can be disconnected without substantial injury to the building, does not pass under a mortgage of the house, where it was placed therein under a contract providing that it should remain the property of the seller until paid for. 37 N. Y. Supp. 19, reversed.

2. CONDITIONAL SALE—RIGHTS OF BONA FIDE MORTGAGEE.

Under Laws 1884, c. 315, providing that in every contract for the conditional sale of chattels, accompanied by delivery, the condition shall be absolutely void against subsequent purchasers and mortgagees in good faith unless the contract shall be filed, a failure to file the contract does not avoid the condition as to a mortgagee who had actual notice of the condition. 37 N. Y. Supp. 19, reversed.

Appeal from Onondaga county court.

Action by William Duffus against Howard Furnace Company to recover the value of a portable furnace. A judgment of the municipal court of the city of Syracuse in favor of defendant was reversed by the county court (37 N. Y. Supp. 19), and defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Ceylon H. Lewis, for appellant.

Walter S. MacGregor, for respondent.

WARD, J. John Schaffer, of the city of Syracuse, was on the 8th day of October, 1891, the owner of lot 21 in block No. 613 in the city of Syracuse, being 40 feet front and 8 rods deep. Upon this lot a new house was constructed by Schaffer, and a portable furnace put therein by the defendant under a contract between Schaffer and

the defendant, whereby the defendant was to be paid for the furnace $155 on the following March. The contract was in writing, and signed in duplicate, and contained this clause:

"The furnace, together with all materials furnished by the first party [the defendant], shall remain the property of said first party until the contract price below named is fully paid; and the second party shall be liable for any damage to said apparatus, after completion, until said amount is paid in full."

This furnace was for the purpose of heating the house. It was set up in the cellar of the house, upon a row of bricks placed upon the bottom of the cellar, connected with a smoke pipe that extended into the chimney, and with hot-air pipes, made of tin, extending through the house; and there was a cold-air box, also, connected with the furnace. The furnace could be readily disconnected from the cellar and the pipes and cold-air box, without any substantial injury to the building. The furnace was put in early in December, 1891, and two days before this, and on the 7th day of December, Schaffer and his wife executed and delivered to the plaintiff a mortgage upon the house and lot in question, as collateral security for the payment of any and all promissory notes which had theretofore been, or which should thereafter be, given by either Schaffer or his wife, and which had been, or might thereafter be, indorsed by the plaintiff for the accommodation and benefit of Schaffer; and Schaffer covenanted to save the plaintiff harmless from any and all loss, costs, and expenses, or counsel fees, which might accrue to the plaintiff by reason of any indorsements as aforesaid, and as security for the payment of any other indebtedness, of any name or nature, to the extent of $3,500, which, if done, the conveyance would be void. Schaffer was also the owner of four other houses and lots, or buildings and lots, in the city of Syracuse, upon which plaintiff took mortgages from Schaffer as collateral security, with the same condition in each, as above given,—one on August 27, 1891, for $1,000; another, of January 15, 1892, $2,000; one of February 20, 1892, of $6,000; and one of April 7, 1892, $6,000; making a total of $18,500. These mortgages were collateral to notes that were renewed monthly, made by Schaffer, and indorsed by the plaintiff; and the plaintiff was to receive, as compensation for such indorsements, interest at the rate of 2 per cent. a month, or 24 per cent. a year. The business was all transacted at the same bank in Syracuse, where the notes were cashed, and the money advanced to Schaffer,—less, we conclude from the evidence, the 2 per cent. bonus to the plaintiff. The notes outstanding at the time of the trial in the municipal court were 13 in number, of various amounts. On the 6th of May, 1892, Schaffer and his wife executed to the plaintiff what was called in the case a "blanket mortgage" upon all the five lots above referred to, containing the same conditions as first above set forth, and securing the plaintiff to the extent of $18,000. Three days later, Schaffer executed to the plaintiff, in writing, a sale and transfer of all the right, title, and interest of Schaffer to all the rents, with leases, then due, and to become due, to Schaffer on the said houses and lots, and plaintiff went into pos-

session of all the houses and lots, and collected the rents and con-
trolled the property thereafter. The plaintiff immediately commen-
ced foreclosure upon this blanket mortgage, and afterwards amend-
ed his complaint by including all the other mortgages, none of
which were surrendered upon the execution of the blanket mort-
gage; and this foreclosure resulted in a sale of the premises in Au-
gust for $4,000, the property being bid in by the plaintiff, leaving
a net application of the proceeds of the sale upon the mortgages of
$2,640.30. In the meantime the defendant, claiming to own the
furnace (it not having been paid for), removed the furnace, for which
this action was brought, with the result in the municipal court as
above indicated.

We are favored with two able opinions in this case by the learned
judges in the courts below,—the first in favor of the defendant, by
the judge of the municipal court, and the second in favor of the
plaintiff, by the county judge, reported in 15 Misc. Rep. 169, 37 N.
Y. Supp. 19. The amount found due in the foreclosure action, upon
the notes, was $12,523.01, with interest from July 3, 1893. The net
result of these business operations of the plaintiff was that he ob-
tained all these properties upon the foreclosure, that but a few
months before he had deemed security for $18,000, including the
property where the furnace was placed, four brick houses, and also
brick flats, on valuable lots in different portions of the city of Syra-
cuse, and a deficiency judgment of nearly $10,000, including what-
ever he may have received from the bank at the rate of 2 per cent.
a month.

The cases of Ballard v. Burgett, 40 N. Y. 314, and Austin v. Dye,
46 N. Y. 500, finally settled the law in this state to be that, where
personal property was transferred upon an agreement that the title
to the property should remain in the conditional seller until paid
for, the seller could retake the property, if not paid for as stipulated,
even from a bona fide purchaser from the conditional purchaser
while in his possession. Folger, J., says in Tifft v. Horton, 53 N.
Y. 380:

"It is well settled that chattels may be annexed to the real estate, and still
retain their character as personal property. See Voorhees v. McGinnis, 48
N. Y. 278, and cases there cited. Of the various circumstances which may
determine whether, in any case, this character is or is not retained, the in-
tention with which they are annexed is one; and if the intention is that they
shall not, by annexation, become a part of the freehold, as a general rule
they will not. The limitation to this is where the subject or mode of annexa-
tion is such as that the attributes of personal propery cannot be predicated
of the thing in controversy (Ford v. Cobb, 20 N. Y. 344), as where the property
could not be removed without practically destroying it, or where a part of it
is essential to the support of that to which it was attached."

Some of the cases use the expression that, where it is expressly
agreed that the property attached to the freehold shall not become
a part of the realty, there is impressed upon it, although attached
to the realty, the character of personal property; and, as germane
to this, we cite Sisson v. Hibbard, 75 N. Y. 545; Ford v. Cobb, 20
N. Y. 346; Tyson v. Post, 108 N. Y. 220, 15 N. E. 316; Manning v.
Ogden, 70 Hun, 399, 24 N. Y. Supp. 70; Iron-Works Co. v. McEvony

(Neb.) 66 N. W. 290. In the case at bar the retaining of the title by the defendant, in the furnace, with the implied right to retake it, if not paid for, after it had been placed in the building, amounted to an agreement between the parties that the defendant could disconnect the property from the realty upon the failure of Schaffer to perform his contract; and therefore there was impressed upon this furnace, although attached to the freehold, the character of personal property, and the prior mortgage of the plaintiff upon the house and lot did not include it. The case does not show that the removal of the furnace would create such an injury to the freehold as would bring it within the exception above quoted in Tifft v. Horton, supra. The county court reversed this judgment upon the ground that under the blanket mortgage, which was given subsequent to the furnace being put into the house, the plaintiff was a purchaser for value; agreeing, however, that if the mortgage had been given for a pre-existing debt, without any new consideration, he would not be such purchaser for value (Duffus v. Furnace Co., 37 N. Y. Supp. 21); citing Jones v. Graham, 77 N. Y. 628; Thompson v. Van Vechten, 27 N. Y. 568–580; De Lancey v. Stearns, 66 N. Y. 157; Asher v. Deyoe, 77 Hun, 533, 28 N. Y. Supp. 890,—which sustain the proposition thus laid down. The county court then assumes that, the plaintiff being such purchaser for value, he comes within the protection of the statute, chapter 315 of the Laws of 1884, and the amendments thereto. That portion which it is material here to consider is as follows:

"In every contract for the conditional sale of goods and chattels hereafter made, which shall be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the thing contracted to be sold, all conditions and reservations which provide that the ownership of such goods and chattels is to remain in the person so contracting to sell the same, or other person than the one so contracting to buy them until said goods or chattels are paid for, or until the occurring of any future event or contingency, shall be absolutely void as against subsequent purchasers and mortgagees in good faith, and as to them the sale shall be deemed absolute, unless such contract for sale with such conditions and reservations therein, or a true copy thereof shall be filed as directed in the succeeding section of this act."

Then follows the direction as to where such instrument should be filed, which in this case should have been filed in the Onondaga county clerk's office, in the city of Syracuse. There was no evidence before the trial court whether this instrument was filed or not. The judgment roll in the foreclosure was introduced in evidence upon the trial, and the plaintiff testified upon the subject of the consideration of the blanket mortgage. He did not give any evidence tending to show that he was ignorant at the time he took the blanket mortgage of the terms of the contract under which the furnace was put into the house, and there was no such evidence in the case; but the plaintiff did testify that he knew that the defendant, in the fall of 1891, was putting a furnace into the cellar of the house in question, and he saw it there after he had obtained possession, and that he asked Schaffer if it had been paid for. But Schaffer's answer does not appear in the evidence. It was not sufficient for

the plaintiff to simply establish, if he has done so, that the blanket mortgage was given upon some new consideration, in whole or in part, in order to establish that he was a mortgagee in good faith. He must not only be a mortgagee for value, but also a mortgagee without notice. Berner v. Kaye, 14 Misc. Rep. 1, 35 N. Y. Supp. 181; Spicer v. Waters, 65 Barb. 220, 231, 232; Jewett v. Palmer, 7 Johns. Ch. 65. The burden of proving that the plaintiff was a mortgagee in good faith was upon him. If there was an omission to file the mortgage, that omission does not relieve the plaintiff. The contract is not void, as against him, unless he proves himself within the class of persons that the statute declares the contract void as against. See above cases, and Abb. Tr. Ev. 716, and cases there cited. The opinion of the chancellor in Jewett v. Palmer, supra, is stated in the syllabus of the case, and is quoted with approval in Spicer v. Waters, supra, as follows:

"To support the plea of bona fide purchase without notice, the defendant must aver and prove, not only that he had no notice of the plaintiff's rights before his purchase, but that he actually paid the purchase money before such notice."

The judgment in foreclosure confers only the right which the plaintiff possessed as mortgagee, and unless, as subsequent mortgagee in good faith, he is protected by this statute, he must fail. Rector, etc., v. Mack, 93 N. Y. 488; Code Civ. Proc. § 1632. The municipal court passed upon the fact as to whether the blanket mortgage was given for a pre-existing debt merely, and whether any new indorsement had been made, or costs or liability incurred, upon the faith thereof. It had before it evidence that all the notes that the blanket mortgage was given to secure were renewals of old notes, except a small one of $183, and a portion of another note, the amount of which was not defined. The plaintiff testified on the subject. If any new indorsements were made, or costs or liability had been incurred, by the plaintiff, upon the faith of this particular blanket mortgage, it should have been shown. There were two mortgages in existence that had been given before the furnace was put in, including the one upon the house where it was put in, and we have no evidence but what these new liabilities were incurred upon the faith of one of those mortgages. It would naturally have been incurred upon the faith of the first mortgages, and as to them the plaintiff was not a subsequent mortgagee. Upon this question of bona fides the trial court could take into consideration all the evidence in the case. It does not appear that any of the notes that were renewed from time to time were surrendered upon renewal, and we have seen that none of the mortgages were surrendered when the blanket mortgage was given. The plaintiff testified that the amount for which he was liable upon the notes fluctuated from $600 to $12,000. The plaintiff testified that he took the blanket mortgage to save costs in foreclosure. He collected about $600 in rents, as mortgagee in possession. Under all the extraordinary circumstances of this case, the plaintiff being an interested party, the trial court was not bound to believe the evidence of the plaintiff that there was even the trifling amount of new considera-

tion stated in the evidence.    We think there was evidence tending to justify the conclusions of the trial court upon the subject we are considering, which should have sustained its judgment in the county court.

The appellant makes the point that inasmuch as, by chapter 684 of the Laws of 1893, portable furnaces were taken out of the statute of 1884, requiring the filing of the contract, it operated as a repeal of the statute last mentioned, so far as portable furnaces are concerned, and that such repeal having been made without any saving clause, reserving former rights of action, the plaintiff's cause of action fell with such repeal.    There is some authority upon this subject.    In Butler v. Palmer, 1 Hill, 334, the court says:

"A repealing clause is such an express enactment as necessarily divests all inchoate rights which have arisen under the statute which it destroys.    These rights are but an incident of the statute, and fall with it, unless saved by express words in the repealing clause."

And see, upon this subject, Knox v. Baldwin, 80 N. Y. 610; Church v. Rhodes, 6 How. Prac. 281; Richardson v. Pulver, 63 Barb. 67; Comstock v. Carr, 6 Wend. 526; Washburn v. Franklin, 35 Barb. 599. It is unnecessary, however, to determine this question, and we put our decision upon the other propositions in the case.

The judgment of the county court should be reversed, with costs in that court, and that of the municipal court affirmed, also with costs of this appeal.    All concur.