The judgment of the Appellate Term should be affirmed, with costs.

Judgment of Appellate Term reversed and judgment of the General Term of City Court of New York affirmed, with costs to defendant. Leave granted to plaintiff to appeal to the Court of Appeals, if he so elects.

---

WILLIAM KERBY, Respondent, *v.* HENRY F. CLAPP and HERBERT W. CLAPP, Appellants.

*Conditional sale of ranges and heaters — they are "household goods" and the contract need not be filed — exemption of "portable heaters" — rights of a subsequent grantee of the premises.*

Where ranges and heaters are furnished for use in a house to which they are connected by the ordinary attachments of pipes, but easily detachable, under a condition that the title thereto shall not pass until full payment has been made therefor, and the house is subsequently sold, the title to the ranges and heaters will remain in the party by whom they were thus furnished.

Such articles are "household goods" within the meaning of chapter 315 of the Laws of 1884, as amended by chapter 632 of the Laws of 1892 and by chapter 684 of the Laws of 1893 (the Conditional Sales Law), and the contract having in this case been executed in duplicate, and one duplicate copy having been delivered to the purchaser it is not necessary to file the contract in the county clerk's office.

"Portable furnaces" are also expressly excepted from its operation by the act of 1893.

*Semble,* that a purchaser of the house would not be a *bona fide* purchaser for value of the ranges and heaters therein, if they were to be regarded as personal property;

That the rule, that where one of two innocent persons must suffer from the fraud of a third party the loss must fall upon him who has enabled such third person to do the wrong, had no application to this case.

APPEAL by the defendants, Henry F. Clapp and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 7th day of November 1896, upon the report of a referee.

*Edward E. Sprague,* for the appellants.

*Eustace Conway* and *Charles R. Westbrook,* for the respondent.

WILLARD BARTLETT, J.:

In August, 1894, the defendants purchased two houses, Nos. 179 and 181 Van Voorhis street, in the city of Brooklyn, from Charles J. Titus and wife. There were then in the houses four ranges and four heaters. These had been placed there by the plaintiff in April, 1894, at which time the premises were owned by one Annie Winter. The plaintiff did not sell them to her, however, nor does it appear in any manner how, if at all, she was connected with the transaction. He sold them to a man named Peter Van Varick, and the agreement of sale is contained in a written contract which provided, among other things, that the goods were not to be considered sold, nor was the title to pass, until the ranges and heaters were fully paid for. This contract was filed in the register's office of Kings county, but not until after Annie Winter had sold the houses to Charles J. Titus.

One of the defendants testified that, at the time he took the deed for the houses, he did not know of any claim on the part of the plaintiff to these ranges and heaters.

The plaintiff was not paid for the ranges and heaters either by Peter Van Varick or anybody else. He made a demand upon the defendants for the return of the articles, which demand was not complied with, and thereupon he brought the present suit to recover damages for their conversion.

We are quite satisfied with the conclusion of the referee that the ranges and heaters in question were not fixtures, and that the manner in which they were attached to the realty did not deprive them of their character as personal property. It is said that if the ranges were detached from the water-pipe system of the houses, the water would flow from the connections, which is doubtless true if the water were not previously turned off, but so it might be urged that

chandeliers are fixtures because, if removed without first shutting off the gas, their removal would permit the gas to flow into the house. Yet it is settled that chandeliers are not fixtures. (*McKeage* v. *Hanover Fire Ins. Co.*, 81 N. Y. 38.) As to the heaters in the case at bar, they were not essentially different from portable stoves, and there is no more reason to regard them as fixtures than there would be to treat such stoves as real property. (*Freeland* v. *Southworth*, 24 Wend. 191.)

While it is no doubt true, as contended by the appellants, that the intent with which chattels are attached to the freehold is a very important element in determining whether they are to be regarded as fixtures or not, the only evidence of intent we have in the present case is as to that of Van Varick, who put up the ranges and heaters. We know nothing as to what Mrs. Winter intended. If Van Varick is to be deemed her agent, her intent was that the ranges and heaters should become a part *of the realty when paid for*.

But, even if the character of the articles and the mode of their attachment to the freehold had been such that the ranges and heaters might have been deemed fixtures in case the owner of the houses placing them therein had become their unqualified owner, they nevertheless continued to be personal property, by virtue of the arrangement between the purchaser and the vendor (the plaintiff), to the effect that the title should remain in the latter until the goods were fully paid for. (*Ford* v. *Cobb*, 20 N. Y. 344.) In the case cited, it is true, the grantee of the land had notice of a claim on the part of the vendor of the alleged fixtures by a chattel mortgage on file; but that such a notice is not necessary to protect the original vendor's rights is apparent from the earlier case of *Mott* v. *Palmer* (1 N. Y. 564), where it was held that fences on a farm which had been erected by a third person under an agreement that the builder might remove them at will did not pass by a conveyance of the freehold, though such fences were apparently part of the realty and the grantee had no notice of the arrangement permitting their removal.

It is to be observed also that the defendants are in no wise purchasers for value of the ranges and heaters if regarded as personal property. Their only claim of title is by means of the conveyance of the houses in which the ranges and heaters were placed.

I cannot see how the rights of the parties are affected by the statute requiring the filing of contracts for the conditional sale of personal property on credit. (Laws of 1884, chap. 315, as amended by Laws of 1892, chap. 632, and Laws of 1893, chap. 684.) Household goods are excepted from the operation of that act, where, as in the present case, the contract has been executed in duplicate and one duplicate has been delivered to the purchaser. The referee has found correctly, as it seems to me, that the ranges and heaters in question are household goods, and, therefore, outside the operation of the statute. Furthermore, the amendment of 1893 excepts "portable furnaces" from the effect of the Conditional Sales Law, under which designation the heaters are certainly included; and that amendment, being enacted and taking effect before the contract in the present suit, clearly applies to it. (See *Duffus* v. *Howard Furnace Co.*, 8 App. Div. 567.)

For these reasons, as well as those stated by the referee in his opinion,* I think the judgment should be affirmed.

All concurred.

Judgment affirmed, with costs.

---

* The following is the opinion of the referee :

To THE SUPREME COURT :

I, William J. Carr, the referee herein appointed to hear and determine the issues in this action, do hereby report :

The hearing on the issues herein was regularly brought on before me, and the testimony adduced by the parties hereto reduced to writing, and is hereto annexed, and on the same I do find as follows :

On March 1, 1894, the plaintiff made to one Peter Van Varick a written proposal to furnish to said Van Varick, for use in certain houses then being built on Van Voorhis street in the city of Brooklyn, owned by one Annie Winter, certain heaters and ranges to be fitted in and attached to said houses.

On April 18, 1894, Van Varick accepted the proposal, and there was indorsed on the back of the written proposal a memorandum in writing, in which it was provided that the plaintiff should be paid in installments, part on delivery of the goods, part in thirty days from delivery, and the balance within sixty days from delivery. The memorandum contained a clause as follows : " And it is understood that the goods specified in this contract are not to be considered as sold or title to be passed until fully paid for." This memorandum was signed by the vendee, Van Varick. At the same time the written contract, proposal and acceptance were executed in duplicate, one given to the vendee and one retained by the vendor.

THE BOARD OF COMMISSIONERS OF CHARITIES AND CORRECTIONS, on the Complaint of TESSIE COWIE, Respondent, *v.* RICHARD McCLOSKEY, Appellant.

*Bastardy proceedings upon an appeal from a filiation order — trial* de novo *in the County Court — right of appeal to the Appellate Division.*

Upon an appeal from a filiation order made by a police justice, the County Court is not confined to a determination of the question whether the police justice erred on the evidence before him, as section 864 of the Code of Criminal Procedure requires a trial *de novo* in the County Court.

The amendments, made in 1890, to sections 749 and 751 of the Code of Criminal Procedure, relating to a review of "a judgment upon conviction," have not changed the character of the proceeding on appeals from orders in bastardy proceedings; sections 861–880 provide a complete scheme for appeals in such cases and prescribe the powers of the court on such appeals.

*Quære,* whether an appeal lies to the Appellate Division from an order of the County Court made in a bastardy proceeding.

APPEAL by the defendant, Richard McCloskey, from an order of the County Court of Kings county, entered in the office of the clerk

In the latter part of the month of April, 1894, in pursuance of the contract, the vendor delivered at the houses Nos. 179 and 181 Van Voorhis street four ranges and four heaters which were of the aggregate value of $166. There were furnished for each house a "No. 7 range" with boiler ; a "No. 17 range without a boiler ;" one "No. 4 Fidelity heater and one No. 7 Fidelity heater." The plaintiff sent a man to the houses who "set" the ranges and heaters. The "No. 7 ranges" were very much the same as ordinary cook stoves, except that they had a water back attachment connected with a galvanized iron boiler which rested horizontally on iron bracket supports arising from the sides of the stoves ; the boilers were connected with the water supply of the house by screw couplings in the usual manner for the purpose of furnishing hot water at the adjoining sink. They were set up against the wall in the corner of the room used as the kitchen, and connected by a smoke pipe with the flues in the house. These ranges appear to have been used on the upper floor of the house. The "No. 17 ranges" were similar, except that they are without boilers. There is some dispute as to the manner in which these "No. 7 ranges" were set. According to the plaintiff they were shoved into the fire "place" and the water back turned around "so the plumber could run water into it," and according to the testimony of the defendant all the ranges were "set" alike in the corners of the rooms used as kitchens, in which rooms there were no fireplaces. There is, however, no substantial conflict as to the manner in which they were connected with the water pipes, etc., of the houses.

of the county of Kings on the 16th day of December, 1896, affirming an order of filiation made against the defendant by a police justice of the city of Brooklyn.

*Francis A. McCloskey,* for the appellant.

*Charles T. B. Rowe,* for the respondent.

CULLEN, J. ·

It is unnecessary to determine the question whether in a bastardy proceeding an appeal lies to this court from an order made by the

The heaters were "set" as follows: One on the basement floor of the house, by being shoved into the fireplace, which was purposely adapted for occupancy by such a heater; the smoke pipe passed through a piece of sheet iron fastened in the fireplace over the heater; in the rear of the heater was a brick chamber, into which radiated the heat; this chamber was built with an arch to prevent the heat from going up the chimney, and to throw it into a flue connecting with a register in the fireplace of the floor above, used as a parlor. The heater used on the upper floor had no register attachment.

Both heaters could be removed from the respective fireplaces without any injury to the freehold.

It appears that Van Varick, the vendee, failed to make the payments required by his contract.

On the 12th day of June, 1894, the plaintiff filed a copy of the contract in the office of the register of Kings county; in the meanwhile, Annie Winter, who owned the real estate at the time of the delivery of the goods, conveyed the premises to Charles J. Titus, by deed dated and recorded June 6, 1894; and by deed dated August 6 and recorded August 15, 1894, Titus conveyed the premises to these defendants. The ranges and heaters passed with the realty to the successive grantees of the real estate, and are now in the possession of the defendants in this action.

On November 5, 1894, the plaintiff demanded possession of the ranges and heaters from the defendants, and possession was refused. The plaintiff thereupon brought this action, to recover damages against the defendants, on the ground of conversion, claiming that the title to the goods was still in him.

The defendants answer that the goods were sold for use, in such a way that they became attached to and formed a part of the realty, and that, as they were purchasers of the realty in good faith, and for valuable consideration, their title to the fixtures in the house is now superior to that of the plaintiff. They contend furthermore, that if these goods did not become fixtures, but remained personal property, the filing of the contract in the register's office was of no avail to the plaintiff, as the goods were household goods, and as such excepted from the operation of chapter 315 of the Laws of 1884 by chapter 684 of the Laws of 1893, and the prior acts it amended; and that in such case the plaintiff, having intrusted his property to a person, who, by its possession, might induce *bona fide*

County Court. In *People ex rel. Comrs. of Charities* v. *Cullen* (151 N. Y. 54) the Court of Appeals intimated that the right to such an appeal is open to grave doubt. But we find no reason to interfere with the judgment of the court below on the merits.

On the hearing in the County Court the appellant insisted that that court was limited to an examination of the proceedings before the police justice, and that the only matter to be determined by the

---

purchasers to deal with him as its owner, was estopped from asserting title against a purchaser for value without notice.

Perhaps the latter point may be considered first more profitably.

The scheme of the Conditional Sales Law of 1884 was to render void against *bona fide* purchasers for value conditional sales of personal property, unless the contract of sale was filed in the office of the county clerk or register of the county where the vendee then resided.

If this conditional sale was of such a nature that the contract should have been filed in the register's office, there can be little doubt that the conditions were void as against any *bona fide* purchaser from that vendee or his privies.

The agreement was made and the goods delivered in April, but the contract was not filed until June twelfth, several days after the defendant's grantor, Titus, had bought the real estate from Annie Winter for a good and valuable consideration.

If, by the delay in filing the contract, Titus had acquired any rights against the plaintiff, his rights passed to these defendants, who can now assert them as privies of Titus. The question arises whether or not these goods were such as would fall within the exceptions of section 7 of chapter 315 of the Laws of 1884, as it was in force at the time of the sale (Laws of 1893, chap. 684).

Section 7 distinctly excepts from the operation of the act "house old goods," provided the contract of sale be executed in duplicate, one delivered to vendee and one retained by the vendor. This is precisely what was done in this case.

The learned counsel for the defendant asserts in his brief that if these goods are not fixtures, then they are "household goods." If so, the failure to file the agreement in time was of no disadvantage to the plaintiff, as there was no obligation to file the agreement at all, and the conditions of the agreement would be conserved even against purchasers in good faith and without notice, if the contract were executed in duplicate as provided in section 7 of the act as amended, it being the scheme of that section to make the duplicate execution, etc., of the contract equivalent to the filing of a copy of the contract in so far as the goods therein specifically enumerated are concerned.

In *Iden* v. *Sommers* (46 N. Y. St. Repr. 240) the plaintiff delivered to one Wolff "gas fixtures," under a contract of conditional sale to be paid for in installments. The fixtures were annexed by Wolff to his house for use. Subsequently he mortgaged the property to the defendant, who foreclosed his mortgage and disposed of the fixtures. The defendant was, thereupon, sued in conversion for the value of the fixtures; and he sets up the defense that he was a mortgagee in good

court was whether the police justice erred on the evidence before him. The appellant declined to offer any evidence, and refused to cross-examine plaintiff's witnesses. There is no authority whatever for this claim of the appellant. Section 864 of the Code of Criminal Procedure is a re-enactment of 1 Revised Statutes, 647, section 28. There seems to have never been any dispute as to the true construction of this section, or any denial that its provisions required a trial

faith, without notice, and for a valuable consideration; and that the conditions of the sale could not be enforced as against him, as no copy of the contract was filed in the proper office. It was held that "gas fixtures" were really "house-hold goods," under section 7 of the act as it now stands; and that the failure to file conferred no rights upon the mortgagee as against the vendor.

The concession that if the goods at bar are to be considered as personalty, they are "household goods" would appear to be harmony with the reasoning in the opinion in *Iden* v. *Sommers*, and the numerous authorities cited. If these goods remain personal property after their annexation to the freehold, then the defendants are clearly liable to the plaintiff for conversion, unless there are some circumstances in the case at bar to raise the doctrine of equitable estoppel against the plaintiff. The learned counsel for the defendants asserts that the facts here are governed by the equitable rule, that where one of two innocent persons must suffer from the fraud of a third person, the loss shall fall upon him who has enabled such third person to do the wrong.

I doubt that this rule is applicable to this case at bar, for, to quote the words of the Court of Appeals in a very recent decision, "that doctrine applies only in an emergency; it solves problems which have no other solution; it supplies a ground of decision where all others are absent; * * * it is a rule of last resort applicable only where all others fail," etc. (*Rapps* v. *Gottlieb*, 142 N. Y. 168.)

In the opinion just quoted from the court refuses to apply this equitable rule in face of the repeated decisions that an assignee of a mortgagee takes no better title than his assignor. With equal reason, the rule cannot be relied upon to give a vendee of personal property any better title than his vendor, in the absence of any facts upon which an estoppel *in pais* could be based justly. (*Ballard* v. *Burgett*, 40 N. Y. 314; *Austin* v. *Dye*, 46 id. 500; *Duffus* v. *Howard Furnace Co.*, N. Y. L. J., Oct. 6, 1896; S. C., 8 App. Div. 567.)

There are circumstances in this case under which it might be claimed that the plaintiff would be estopped from asserting title against these defendants as privies in contract with Titus, claiming under Annie Winter. It appears from the written proposal of the plaintiff that he knew Van Varick was to annex the goods to the freehold of Annie Winter. There is no proof that he was the agent of Annie Winter. He signed the contract as principal. There is no proof of the nature of the agreement between him and her. If she was a purchaser for value from Van Varick without notice, then the plaintiff would be estopped from asserting title against her, as he gave the goods to Van Varick with full notice that they were to be used in the completion of Annie Winter's house. Any estoppel in favor of

*de novo* in the County Court. (*Roy* v. *Targee,* 7 Wend. 358; *People ex rel. Kenfield* v. *Lyon,* 83 Hun, 303; *People ex rel. Comrs. of Charities* v. *Schildwachter,* 87 id. 363.)

The amendments of 1890 to sections 749 and 751 of the Code of Criminal Procedure have not changed the character of the proceedings on appeals from orders in bastardy proceedings. The language of section 749 is for the review of "a judgment upon conviction."

Winter would be available to her privies. (*Union Dime Bank* v. *Wilmot,* 94 N. Y. 221; *Wood* v. *Seely,* 32 id. 105; *Campbell* v. *Hall,* 16 id. 575.)

The practical difficulty in the way of this contention lies in the fact that there is no proof that Annie Winter was a purchaser for value without notice. Estoppel is never presumed. While the law would ordinarily presume that the goods were sold rather than given, yet it it will not presume absence of notice and a purchase for a consideration for the purpose of divesting title by estoppel. Consideration and good faith must always be proved in such a case. (*Jewett* v. *Palmer,* 7 Johns. Ch. 65; *Spicer* v. *Waters,* 65 Barb. 227.) Here, however, there is no proof of any facts from which it can be inferred that Annie Winter was a purchaser in good faith for a valuable consideration. It seems quite clear that there are no circumstances in the case upon which an estoppel can be raised against the plaintiff by these defendants, except in so far as they may claim under Annie Winter. If she did not acquire title against the plaintiff, then neither did Titus nor these defendants.

It is claimed by the defendants, however, that the goods in question were so annexed to the real estate as to become a part thereof, and, consequently, lost their character of personal property, and that the plaintiff cannot follow them into the possession of subsequent purchasers of the realty in good faith and without notice. In all the cases where an owner of personal property lost title to his goods through the fact that by the acts of another they had become attached to the realty, the connection will be found to have been so substantial that the goods could not be disconnected from the realty without serious injury to it.

Such is *Fryatt* v. *Sullivan Co.* (5 Hill, 116; S. C., 7 id. 529), where a hirer of engines and boilers so connected them with the freehold, "that they could not be removed without destroying the building in which they were placed."

In the case at bar there was certainly no such connection of the ranges and heaters. The ranges were connected with the freehold simply by an ordinary stove smoke pipe, and by screw couplings with the water pipes of the house; the heaters filled fireplaces and had no connection with the surrounding walls. The freehold would not have been impaired to any degree by their removal. Of course, unless other ranges and heaters were supplied, the use of the freehold would not be as beneficial.

This fact, however, will not, within the adjudged decisions, convert these goods into a part of the realty.

In *Freeland* v. *Southworth* (24 Wend. 191) it was decided that a cook stove, standing in a kitchen and connected with the freehold by a smoke pipe, did not

The orders made in bastardy proceedings are never so characterized by the Code, but are spoken of as orders of filiation. If there were no other means of review of decisions in bastardy cases than those prescribed by section 749, the court might be inclined to strain the interpretation of the term "a judgment upon conviction," so as to include such cases. But sections 861 to 880 provide a complete scheme for appeals in such cases, and prescribe the powers of the court on such appeals. It is unreasonable to suppose that, by the amendments to sections 749 and 751 of the Code it was intended to abrogate that scheme.

The order appealed from should be affirmed, with costs.

All concurred.

Order affirmed, with ten dollars costs and disbursements.

pass with the realty as a fixture, notwithstanding the fact that there was no fireplace in the room, and it could not be used beneficially without a stove.

The gas pipes in a house cannot be used without some form of a chandelier, yet chandeliers connected with the pipes by the ordinary screw couplings have been held not to pass with the freehold as fixtures, but to be "mere furniture, and, therefore, chattels, and not appurtenances to the building." (*McKeage* v. *Hanover Fire Ins. Co.*, 81 N. Y. 38.)

It is contended, however, that these ranges and heaters became fixtures within the doctrine of *Ward* v. *Kilpatrick* (85 N. Y. 413).

In the latter case mirror frames "were actually annexed to the realty. They were so annexed during the process of building, and as part of that process," etc. In the opinion of the court it is stated that "their removal would leave unfinished walls, and require work upon the house to supply and repair their absence." "They formed part of the inner wall, * * * and formed the most prominent feature of the internal ornamentation." These mirror frames were in reality a part of the cabinet trim of the house. The court says that the difference between these facts and those in the *McKeage* case is "obvious." They are certainly not the same, and the ranges and heaters in the case at bar are connected with the realty in a manner closely similar to the mode of connection in the *McKeage* case. Their removal would require no "work upon the house to supply and repair their absence," but at most a mere substitution of other ranges and heaters of a similar nature or of ordinary stoves.

It is urged by the learned counsel for the defendants that in large cities custom and usage made ranges and heaters permanent portions of residential buildings, and that for the protection of subsequent purchasers of real property in good faith, public policy should give such custom the force of law.

There is much to be said in support of this contention, but it is a matter of legislative action rather than judicial decision. Judgment is directed for the plaintiff for the sum of $166.66 and costs and disbursements against the defendants.