these goods, and, while owning the goods, had manufactured them into clothing. By reason of a fraud which gave to the plaintiff the right to rescind that sale, the title to the goods sold and delivered to Bloomingdale reverted to the plaintiff. He thus became entitled to retake the property that once had been his, but which he had transferred to Bloomingdale. If it became impossible to separate the goods which he had sold from other goods or property of Bloomingdale's, it may be that he would be entitled to the possession of his own goods, although that involved also the taking possession of what Bloomingdale had added to the plaintiff's property in the process of manufacture; not because he was entitled to the manufactured articles, but because he was entitled to retake the property, the title to which was in him, and the possession of which he could not obtain without at the same time taking the property which Bloomingdale had added to that to which the plaintiff was entitled. But when the question was not as to the property that he was entitled to take physical possession of, but as to the value of the chattels of which plaintiff was the owner, we think such value was that of the property which belonged to the plaintiff, and that, if he obtains a judgment for the value of such goods, he will have obtained a full indemnity. This was expressly decided in the case of Single v. Schneider, 30 Wis. 572, and the same principle was applied in Dyke v. Transit Co., 22 App. Div. 360, 49 N. Y. Supp. 180. This point was raised by the request made by the defendants that the jury be instructed that the plaintiff was entitled to recover for the value of his own goods, and not for the value of the goods manufactured. This request was denied, and to that the defendants excepted.

For these reasons we think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(26 Misc. Rep. 26.)

### COLTON IMP. CO. v. RICHTER et al.

(Supreme Court, Special Term, Erie County. December, 1898.)

1. PROMOTER'S SALE TO CORPORATION—RETENTION OF PROFITS.
     A promoter, organizing a corporation to purchase land, cannot retain profits made from the sale, unknown to subscribers.

2. SAME—BURDEN OF PROOF.
     The burden is on a promoter, seeking to retain profits of a sale to the corporation, to show that his dealings were fair, and that he took no undue advantage of subscribers.

3. SAME—NOTICE TO STOCKHOLDERS AND DIRECTORS.
     That some of the stockholders and directors of a corporation knew a promoter was profiting by a sale of land to it is no defense to an action against him by the corporation for an accounting.

4. SAME—RIGHT OF ACTION.
     The corporation itself may sue a promoter for an accounting of profits of a sale to it wrongfully retained by him. Each subscriber is not bound to sue the promoter separately.

5. SAME—CHARACTER OF ACTION.
     Where a corporation sues a promoter to compel cancellation of a bond and mortgage given to him, on the ground that it represents the profits of a sale made to it, which he wrongfully retains, it is not objectionable as being an action to rescind a part of the contract of sale.

6. ASSIGNEE OF MORTGAGE—TITLE.
    The assignee of a mortgage takes it subject to all the equities between the original parties.

7. SAME—BURDEN OF PLEADING AND PROOF.
    It is incumbent on the assignee of a bond and mortgage, void as between the original parties, to make out a case for equitable relief in defense to a suit to cancel the same, to allege and prove that he took the assignment in good faith, and paid value therefor.

Action by the Colton Improvement Company against Harry Richter and others. Judgment for plaintiff.

John M. Chipman, for plaintiff.
Ticknor & Pierce, for defendant Richter.
Strebel & Corey, for defendant Knox.

LAUGHLIN, J. On the 2d day of November, 1891, one Chauncey C. Bailey was the owner of the premises described in the complaint, consisting of 20 acres of farming land, situate near Depew, in the county of Erie, and on that day he entered into a contract for the sale thereof to the defendant Richter for the sum of $16,000. The contract, which was not delivered on that day, called for the payment of $500 at the time of delivery, and $1,500 within 60 days, when the deed was to be delivered, and it provided that $3,000 of the purchase price should be paid by assuming a mortgage for that amount then on the premises; the balance to be secured by a purchase-money mortgage and a bond which should provide for the payment of $100 on the first day of each month until the whole purchase price should be paid. Before making this contract, Richter had planned to form a syndicate for the purpose of buying the premises for $28,000, and with the intention of making a profit for himself of $600 per acre, or $12,000. Richter caused to be prepared a subscription agreement, to be signed by such persons as he might be able to persuade to take shares in the syndicate. This agreement recited that the undersigned associated themselves for the purpose of buying the premises in question for the sum of $28,000, payable $6,000 within 30 days, when a deed was to be given, and by giving a bond and mortgage for the balance, which should provide for the payment of $200 or more every month, and that the subscribers were to pay $300 for each share set opposite their respective names, as a first payment, and $10 per month thereafter until the receipts from the sales of lots would cover the monthly payments. Thereupon, and before the delivery of the contract for the purchase of the land, or the payment of any money to the owner, Richter, having first subscribed for one share of $1,400, proceeded to induce his friends and acquaintances, and others whom he thought he could interest in the matter, to subscribe for shares. He succeeded in obtaining 15 other subscribers, each for one share, in the same amount. On the 6th day of November he made the first payment to the owner, largely of moneys obtained from such subscribers, and the contract was then delivered to Richter. To the majority of the subscribers Richter represented that the land was to be bought of Bailey for $1,400 an acre. He informed one of the subscribers that the land was costing $1,200 an acre. Some of the subscribers, from previous experience with land syndicates, and

from Richter's agreement to relieve them of their first payments on the shares subscribed by them, supposed and believed that he was making a large profit by way of commissions from the owner. Richter, however, not only deliberately concealed from all the subscribers the fact that Bailey was selling the land for $16,000, or $800 an acre, but, by pledging the owner to secrecy as to the selling price, he prevented his associates from learning the truth. On the 16th of January, 1892, and largely from moneys received on subscriptions, Richter paid Bailey, to apply on the purchase price, $1,150, and obtained an extension of 60 days for the payment of the balance. The subscribers for shares met on the 21st day of January, 1892, and, pursuant to Richter's plan, agreed to, and did, form the plaintiff corporation. Richter was designated in the certificate of incorporation as one of the directors, and six days later he was elected president. At a meeting of the stockholders on the 27th of January the directors were, by resolution, authorized to consummate the transfer of the premises from Bailey to the company, and to execute and deliver the company's bond and mortgage for the balance of the purchase price. On the day following, Bailey executed and acknowledged a warranty deed from himself to Richter, pursuant to the contract of the latter with him; and Richter executed a bond and mortgage to Bailey, pursuant to such contract. These papers were not delivered, however, until the month of January, 1893, on account of Bailey's refusal to accept an additional $8,000 mortgage from the company, and assign the same to Richter as part of his profits, Richter having applied to Bailey from time to time to consent to that course. In the meantime large sums of money were paid by the company directly to Bailey, who indorsed the same on his contract with Richter. The testimony and the minutes of the company show that the directors were dissatisfied with this delay in obtaining the title. When Richter found that Bailey would not be a party to his scheme to deceive his associates in business, he called a special meeting of the directors on the 27th day of January, 1893, and informed them that Bailey had decided to deed the land to him instead of to the company, and that it was desirable that he should resign the office of president, so as not to sign the bond and mortgage, as president, to himself individually; and thereupon he did resign as president, but he continued to be a stockholder and director. He had concealed from the directors and stockholders these negotiations with Bailey for taking the $8,000 mortgage, and also the fact that the papers had been made out for about a year. The papers were then exchanged between Bailey and Richter, and Richter deeded the premises to the company, subject to the $11,000 mortgage, and the company executed a bond and mortgage to him for $8,000, the balance of the purchase price, as the members supposed; he having informed the secretary, as a reason for desiring the bond and mortgage to run to himself, that he had advanced the money to Bailey. The company's $8,000 bond and mortgage were executed on the 30th day of January, 1893; and on the 10th day of November, 1893, Richter assigned the same to the defendant Knox, who is now the holder thereof. Knox was not called as a witness on the trial, nor was any evidence given as to the consideration for the assignment. The company continued to pay interest regularly on the bond

and mortgage down to and including the payment falling due July 30, 1896, since which time it has made no payment on account of either principal or interest.    At the time Richter obtained the contract from Bailey there was considerable activity in the sale of lands in that vicinity, but after a year or so there was less demand, and the land boom commenced to collapse.    As the market price of these lands continued to decline, the stockholders became more and more solicitous about their investment.    Through a free exchange of opinions on the subject of the cost of the land, and the prospect of selling the same, and inquiries of other landowners, some of the stockholders acquired information, for the first time, that the $8,000 bond and mortgage was taken by Richter for part of his profits.    Upon further investigation the directors determined to make no further payments on account of the bond and mortgage, and this action was brought to have the same canceled, and to require Richter to account for all profits that he made on account of the transaction.

Richter was the organizer and promoter of this corporation, and, as such, a fiduciary relation existed between him and the other incorporators.    He held a position of trust and confidence.    They had a right to believe, as the great majority of them evidently did believe, that they were becoming members of this syndicate on an equal footing with Richter.    That not being the fact, the duty devolved upon him of informing them.    The law does not permit him to maintain silence as to his personal interest in the transaction, and to make a profit at the expense of his partners.    Neither law nor equity countenances the making of secret profits by a promoter or a director of a corporation on the sale of property to the corporation.    Richter owed an obligation to every subscriber to disclose fully all of the facts concerning the purchase of these premises, and especially the owner's actual selling price.    It is only where the promoter informs every subscriber, or the director informs every fellow director and stockholder, that he is personally interested, and of the amount of profit he expects to make on a sale to the corporation, that the promoter or director will be permitted to make or retain a profit on such a sale.    This rule of law is settled by numerous well-considered cases.    Getty v. Devlin, 54 N. Y. 404; s. c., second appeal, 9 Hun, 606, 70 N. Y. 504; Munson v. Railroad Co., 103 N. Y. 58-73, 8 N. E. 355; Redhead v. Driving Club, 148 N. Y. 471, 42 N. E. 1047; Rudd v. Robinson (Sup.) 7 N. Y. Supp. 535; Land Co. v. Case, 104 Mo. 572, 16 S. W. 390; McDowell v. Joice, 149 Ill. 124, 36 N. E. 1012; Park Co. v. Roberts, 92 Wis. 345, 66 N. W. 399; Hebgen v. Koeffler, 97 Wis. 313, 72 N. W. 745; Water Co. v. Flash, 97 Cal. 610, 32 N. W. 600; Land Co. v. Loudenslager, 55 N. J. Eq. 78, 35 Atl. 436; Cold-Storage Co. v. Dexter (Wis.) 74 N. W. 976; In re Olympia [1898] 2 Ch. 153.    The burden is on the promoter or director to show that his dealings were fair, and that no undue advantage has been taken of his fellow subscribers or stockholders.    Sage v. Culver, 147 N. Y. 247, 41 N. E. 513; Smith v. Ogilvie, 127 N. Y. 148, 27 N. E. 807; Parker v. Nickerson, 112 Mass. 198.

The fact that some of the stockholders and some of the directors supposed and believed, and had some knowledge, that Richter was making a profit on the sale of the land to the company, does not defeat

this action. Such knowledge on the part of the directors or stockholders is not notice to, or knowledge on the part of, the company. The rule that the company is chargeable with knowledge of facts known to a director, and which he has in mind at the time of transacting corporate business, does not apply to the facts of this case. In this case less than a majority of the directors had any knowledge on the subject; but, even if all had full and complete knowledge, they could not have bound the stockholders who were ignorant of the facts by a contract from which one of their members received an individual profit. If all of the stockholders knew and consented to Richter's making a profit, he would not be obliged to account to the company therefor; but in the absence of such consent, given with such knowledge, he may not retain any individual profit or benefit to himself, but must fully account therefor to the corporation. Imperial M. C. A. v. Coleman, L. R. 6 H. L. 189; Simons v. Oil Co., 61 Pa. St. 221; Mining Co. v. Spooner, 74 Wis. 307, 42 N. W. 259; Burbank v. Dennis, 101 Cal. 90, 35 Pac. 444; Parker v. Nickerson, 112 Mass. 198.

It is further contended that this action cannot be maintained by the corporation, but that the remedy of each stockholder is by an individual suit for an accounting. The evidence in this case shows that many of the subscribers were relieved by Richter from making the down payment on their subscriptions, and that such down payments were not made by Richter or by any one. The other subscribers who paid their entire subscriptions would be entitled to an accounting on the part of their fellow subscribers, and to have each compelled to pay in the entire amount of his subscription. Such relief, however, cannot be granted in this action, for the reason that there is no demand therefor in the complaint, and the subscribers, with the exception of Richter, have not appeared in the action; and as to some of these subscriptions the corporation, as such, probably would not be in a position to maintain such an action. The corporation, as such, is, however, injured by the execution of the bond and mortgage, and by all of the other profits which Richter made. A stockholder could not maintain the action without first requesting the corporation to bring it, and then only on the latter's refusal. If the stockholder could not maintain the action without such demand on the corporation to bring it, as is well settled by the decisions, it must follow that the action is properly brought by the corporation. Greaves v. Gouge, 69 N. Y. 154; Burbank v. Dennis, 101 Cal. 90, 35 Pac. 444.

It is further contended that this is an affirmative action by the company to rescind part of the contract, and that it has retained the fruits of the contract, and does not seek to rescind it in toto. It is urged that the plaintiff should be held to have ratified the contract. I do not regard this as an action to rescind the contract, but rather an action to require Richter to account for the profits which he made, and to preclude him from receiving any benefits on account of the bond and mortgage which were executed by the company to him. and for which it now appears there was no consideration, inasmuch as the bond and mortgage wholly represented profits. Pondir v. Railroad Co. (Sup.) 25 N. Y. Supp. 560.

It follows from the conclusions reached that Richter could not enforce this bond and mortgage against the company, and, under the rule that an assignee of a mortgage takes the same subject to all of the equities between the original parties, Knox cannot enforce the same. Rapps v. Gottlieb, 142 N. Y. 164, 36 N. E. 1052; Brewing Co. v. Iba, 155 N. Y. 224, 49 N. E. 677.

It was incumbent upon Knox to allege and prove that he took the assignment in good faith, and paid value therefor, and what value, in order to make a case for equitable relief; and this he has failed to do. Jewett v. Palmer, 7 Johns. Ch. 65; Jackson v. McChesney, 7 Cow. 362; Weaver v. Barden, 49 N. Y. 297–299; Seymour v. McKinstry, 106 N. Y. 239–242, 12 N. E. 348, and 14 N. E. 94; Duffus v. Furnace Co., 8 App. Div. 572, 40 N. Y. Supp. 925; McGuire v. Insurance Co., 7 App. Div. 591, 592, 40 N. Y. Supp. 300; 2 Pom. Eq. Jur. § 785.

The plaintiff is entitled to judgment that the bond and mortgage, having been given to Richter for profits, are not enforceable against the company, and declaring the same void, and directing the county clerk to cancel the mortgage of record, and for an accounting of all other profits made by Richter, and for the appointment of a referee to take such accounting, as provided in the decision filed herewith.