have been injured. The plaintiff was entitled to her goods when she called for them, and the New York & Long Branch Railroad Company having refused to make such delivery rendered it liable for any damage which the goods might thereafter sustain. McKinney v. Jewett, 90 N. Y. 267; Faulkner v. Hart, 82 N. Y. 413, 37 Am. Rep. 574.

It follows that the determination of the Appellate Term, in so far as it relates to the Pennsylvania Railroad Company, should be affirmed, with costs to it, and judgment absolute entered in its favor, in pursuance of stipulation; and, in so far as it relates to the New York & Long Branch Railroad Company, the same should be reversed, with costs, and the judgment and order of the City Court affirmed, with costs. All concur.

---

(92 App. Div. 491.)

JENNIE CLARKSON HOME FOR CHILDREN v. CHESAPEAKE & O. R. CO. et al.

(Supreme Court, Appellate Division, First Department. March 25, 1904.)

1. TRIAL IN EQUITY OF ACTION AT LAW—CONSENT OF PARTIES—TIME TO OBJECT.

Parties consenting to the trial of an action as a suit in equity cannot, on appeal, raise the question that the action was triable at law only.

2. CORPORATIONS—REGISTERED BONDS—TRANSFER—FORGED AUTHORITY—LIABILITY OF CORPORATION.

Where bonds of a railroad company, stipulating that the holder may register them on presenting the same, and providing that, when a bond is registered, the person in whose name it is registered shall be deemed the owner thereof, and payment of or on account of the principal sum in said bond shall thereafter be made to such person only, are registered, they become payable to the holder, making the corporation indebted to the holder to the amount of the bond; and hence a transfer of the bonds under a forged authority does not relieve the company from liability to the holder.

3. SAME—TREASURER—AUTHORITY—SALE OF CORPORATE ASSETS.

A treasurer of a corporation, merely empowered by the by-laws to "have charge of and be responsible for" the securities of the corporation, has no authority to change the registration and sell certain of its bonds without special authority.

4. REGISTERED BONDS—FORGED AUTHORITY OF TRANSFER—LIABILITY OF BROKER.

The treasurer of a corporation without authority took railroad bonds registered in the name of the corporation to a broker for sale. The broker refused to handle the bonds unless they were transferred to bearer by the local transfer agent of the railroad company. The transfer agent required from the corporation a copy of a resolution of its directors authorizing the transfer, and power of attorney to make it. The treasurer drew up a resolution of authority, and forged thereto the signatures of the officers and the seal of the corporation, and also forged a power of attorney. The transfer agent thereupon in good faith made the transfer, and the broker sold the bonds. Held, that the broker was liable to the corporation for the value of the bonds, though he acted in good faith.

5. SAME.

Where a New York Stock Exchange broker, in the name of his firm, and his cashier, who personally knew the treasurer of a corporation, wit-

nessed in good faith a forged power of attorney authorizing a transfer of registered bonds belonging to the corporation by the treasurer, and the transfer agent of the railway company issuing the bonds acted on such power of attorney, and transferred the bonds according to a custom existing in New York City transfer offices for such transfer agents to accept the witnessing of such powers of attorneys by stock exchange brokers as a guaranty of the identity of the person executing the power, the broker was liable to the company on its being compelled to replace the bonds.

Van Brunt, P. J., and Ingraham, J., dissenting in part.

Appeal from Special Term, New York County.

Action by the Jennie Clarkson Home for Children against the Chesapeake & Ohio Railway Company and Robert Gibson, as general partner of the limited partnership of H. Knickerbocker & Co., to compel defendants to replace certain bonds and coupons, or account for their value. From a judgment of the Special Term (83 N. Y. Supp. 913) in favor of plaintiff against both defendants, they appeal, and from a judgment in favor of defendant railway company against defendant Gibson, he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Austen G. Fox, for appellant Gibson.
John S. Sheppard, Jr., for appellant Chesapeake & O. Ry. Co.
Henry W. Sackett, for respondent.

INGRAHAM, J. The action was brought in equity; the relief asked being that the defendants be required to deliver to the plaintiff bonds and coupons of like kind and value as those described in the complaint, or that the defendants be required to account to plaintiff for the value of said bonds and coupons, and for other and further relief. The defendant the Chesapeake & Ohio Railway answered, denying liability, demanding that the complaint be dismissed, and asking that the ultimate rights of the defendant railway company and the defendant Gibson, as between themselves, be determined, and that the Chesapeake & Ohio Railway Company have such affirmative relief against said Gibson as it may be entitled to receive, and that it may have such other or further or different relief in the premises as such defendant may be entitled to. This answer was served upon the defendant Gibson. Gibson answered, and demanded judgment that the complaint be dismissed. On these pleadings the action was brought on for trial at Special Term. No objection to the form of the action was at any time taken by either of these defendants, nor did either of them insist that the action was not properly triable as one in equity, or that either party was entitled to a trial by a jury. The questions presented by the pleadings, so far as the record shows, were submitted to the trial court, and a determination as to the ultimate liability of the defendants to the plaintiff, and of the defendant Gibson to the railway company, was asked for. At the end of the plaintiff's case, and again at the end of the whole case, the defendants severally moved to dismiss the complaint upon the ground that neither of the defendants was liable to the plaintiff; and the defendant Gibson also moved to dismiss

the cause of action set out in the answer of the railway company upon the ground that he was not liable to it. The railway company asked for judgment against Gibson. These motions were taken under consideration by the court, the parties submitting the questions as to their liability without objecting to the form of action. Upon appeal it is too late for either of the parties to the action to insist that the question of the liability of the defendants to the plaintiff, or of the defendant Gibson to the Chesapeake & Ohio Railway, was a legal liability, which could only be enforced in an action at law. By this submission the court was justified in determining the question between the parties to the action, irrespective of the form in which it was brought, and the extent of the liability of the defendants will be the only question considered on this appeal.

After the submission of the case the court found the facts, as to which there was no substantial dispute, and the questions resolve themselves into questions of law upon the facts thus found. It was found that the plaintiff was a domestic corporation organized for charitable purposes, and the defendant the Chesapeake & Ohio Railway was a foreign corporation, having a registry or transfer office in the city of New York; that its transfer agents were J. P. Morgan & Co., a member of whose firm was a member of the New York Stock Exchange; that the defendant Gibson was the general partner of the limited copartnership of Knickerbocker & Co., stockbrokers doing business in the city of New York; the defendant Gibson being a member of the New York Stock Exchange. In April, 1898, the plaintiff purchased and caused to be registered in its name on the books of the defendant the Chesapeake & Ohio Railway three bonds issued by the Railway Company, of the par value of $1,000 each, due in 1992, to secure the payment of which, a mortgage was executed by the defendant railway company. These bonds, when registered, could only be transferred on the books of the company by the registered holder thereof, or by his attorney duly authorized. At the time of the purchase, Charles J. Townsend was treasurer of the plaintiff corporation, and he reported the purchase and registration of these bonds to the directors of the plaintiff, and their purchase and registration in the name of the plaintiff corporation was approved. These registered bonds were kept in a safe hired by the plaintiff corporation in the vaults of a bank in the city of New York. To this box both the president and treasurer of the corporation had access. On March 12, 1900, one Lassels was elected treasurer of the plaintiff corporation, and continued in that office until March 21, 1902. On March 12, 1902, Lassels went to the office of the defendant Gibson with these three bonds of the Chesapeake & Ohio Railway Company, registered in the name of the plaintiff corporation, and told John F. Busch, the cashier of the defendant Gibson, that the plaintiff desired to sell these bonds. Busch told Lassels that, before the bonds could be sold, they must be registered as payable to bearer, and instructed Lassels to take the bonds to the transfer agent of the defendant corporation, and ascertain how the change to bearer could be effected, whereupon Lassels called upon the transfer agent of the defendant corporation, and was informed by such transfer

agent that it was necessary to furnish to the defendant corporation a power of attorney executed by the plaintiff corporation, and the signature thereon guarantied by a firm, one of whose members was a member of the New York Stock Exchange, and also a copy of the resolution of the board of directors of the plaintiff corporation authorizing the transfer. Lassels returned to Gibson's office, and told Busch that the transfer agents required a copy of the minutes of the directors authorizing the transfer and a power of attorney. Busch therefore filled out a power of attorney, authorizing the transfer of the bonds of the Chesapeake & Ohio Railway to bearer, which was signed by Lassels, "Jennie Clarkson Home for Children, George W. Lassels, Treas.," and witnessed by Busch, and Gibson signed the power of attorney with the firm name of Knickerbocker & Co. Lassels also produced what purported to be a resolution of the board of directors of the plaintiff corporation authorizing the transfer of the bonds, to which there was forged the name of the secretary of the plaintiff corporation, and to which there was affixed a forged seal of the plaintiff corporation. No such resolution was ever adopted by the plaintiff corporation, nor did the plaintiff corporation, or any of its officers or members, except Lassels, have any knowledge of the transaction. Lassels procured the bonds from the safe deposit box of the plaintiff corporation without the knowledge of its officers or directors, and had no authority whatever, either under its by-laws, or from its directors or officers, to dispose of them in any way. This power of attorney transferring the bonds and the forged copy of the spurious resolution were taken to the transfer agent of the railway company, and thereupon the bonds were transferred to bearer; and the bonds so transferred were delivered to the defendant Gibson, who sold the same and received the proceeds thereof. Gibson thereupon drew a check to the order of "George W. Lassels, Treas.," who indorsed it, whereupon Knickerbocker & Co. cashed the check, and paid the amount in cash to Lassels, and took his receipt therefor. Lassels appropriated the money to his own use, and the plaintiff never received the proceeds of the sale of the bonds. Immediately upon the discovery of Lassels' acts, the plaintiff made a claim against the railway company and against Knickerbocker & Co. for the value of the bonds, and, liability therefor having been denied, this action was brought.

The court, having found these facts, directed judgment that—

"The defendants, Chesapeake & Ohio Railway Company and Robert Gibson, as general partner of the limited partnership of H. Knickerbocker & Co., replace and pay over to the plaintiff three certain bonds issued by the defendant Chesapeake & Ohio Railway Company, * * * or bonds of like kind and value, or, in default thereof, that the said defendants pay to the said plaintiff the sum of three thousand two hundred and sixty-two and $50/100$ dollars ($3,262.50), the value of said bonds and of said coupons thereto that matured between March 12, 1902, and June 5, 1903, together with interest thereon from the 5th day of June, 1903; and it was further ordered, adjudged, and decreed that in case the defendant Chesapeake & Ohio Railway Company shall be required to pay the within judgment, or any part thereof, the defendant Robert Gibson, as general partner as aforesaid, shall repay to the said defendant Chesapeake & Ohio Railway Company the amount so paid by it on said judgment as aforesaid."

And in pursuance of this direction, judgment was entered.

There are three questions presented on this appeal: First, as to the liability of the Chesapeake & Ohio Railway Company to the plaintiff; second, as to the liability of the defendant Gibson to the plaintiff; and, third, as to the liability of the defendant Gibson to the railway company for the amount that it should be required to pay to the plaintiff.

We will first discuss the right of the plaintiff to recover from the Chesapeake & Ohio Railway Company the value of the bonds. When these bonds were issued they were what are ordinarily known as "coupon bonds," payable to bearer; and in this form they were negotiable, and passed by delivery to a holder for value, without notice of any defect in the title of the transferror. In the bonds and the mortgage to secure their payment there was a provision which authorized the holder of the bonds to register them in his name, so that their negotiability was destroyed. Each bond contains this provision:

"This bond may be registered on the books of the Railway Company, at its office or agency in the city of New York, and if so registered it will thereafter be transferable only upon the books of the Company by the owner in person, or by attorney, duly authorized, unless the last preceding transfer shall have been to bearer, and transferability by delivery thereby restored."

And the mortgage to secure these bonds contained the following provision:

"And it is further mutually agreed that the said Chesapeake & Ohio Railway Company shall and will keep a register or registers of bonds issued hereunder at its office or agency in the City of New York * * * and that any holder or holders of any of the coupon bonds issued under the provisions hereof may register his or her bond or bonds upon presenting the same, and that when a bond shall be so registered the person or persons in whose name or names the same shall be registered shall be deemed and regarded as the owner or owners thereof for all purposes, and payment of or on account of the principal sum in such registered bond mentioned shall thereafter be made to such person or persons, his or their order only, and all such payments so made shall be valid and effectual to satisfy and discharge the liability upon such bond to the extent of the sum or sums so paid, provided that such registry may be changed, and the bond so registered be transferred, upon presentation with the written order of the person or persons in whose name or names the name shall stand registered, properly authenticated, to the person or persons whose name or names shall in such written order be contained to that end; and thereafter the person or persons to whom such bond shall have been transferred as aforesaid shall be held to be the owner or owners thereof with all the incidental rights and powers, and such transfers may be made from time to time as the registered owner or owners of any such bond for the time being may direct as aforesaid; and the registered owner or owners shall also have the right to register any of the bonds registered in his or their names, as payable to bearer, in which case the transferability by delivery shall be restored and the principal thereof be payable to the person presenting the same."

Thus, when these bonds were registered as the property of the plaintiff, they became payable to the plaintiff only, and could be transferred only upon the books of the company by the plaintiff or his authorized agent. The railway company became thus an obligor indebted to the plaintiff in the amount represented by these bonds, upon which indebtedness it agreed to pay interest as therein pro-

vided, and the principal upon maturity. Until the plaintiff assigned or transferred the bonds, that relation between it and the Chesapeake & Ohio Railway Company continued. The provision authorizing the bonds to be retransferred to bearer had no effect upon this obligation of the defendant until such transfer was actually made by the plaintiff or its authorized agent. The discussion by the railway company as to the effect of this provision for registration, and for the transfer of title by the registered owner of the bonds, seems to me to leave out of view the formal legal relations that exist between the owner of the bonds, in whose name they have been registered, and the corporation. There was nothing unusual in that relation. The railway company simply owed the registered owner of the bonds a sum of money, which it had agreed to pay as the bond provided, which was not negotiable. The transfer of this obligation was restricted by the provision in the obligation itself, and the mortgage executed to secure it. The responsibility upon such an obligation is not at all different from that upon a bond secured by a mortgage, or other nonnegotiable obligation, and it was evidently the intention to assimilate the right of transfer and retransfer of the bonds when registered to the transfer of shares of stock in an incorporated company; and the legal effect, I think, of this arrangement, was to place registered bonds and shares of stock of a corporation upon a similar footing as to the requisites necessary for a transfer, so that the owner of the bonds, when registered, should be protected from loss, theft, or embezzlement.

If this is a correct view of the relation that existed, the solution of the right of the plaintiff to a judgment against the railroad company is clear. The plaintiff has never authorized the transfer of these bonds. Its treasurer had no express power to transfer them. By article 7 of the by-laws of the corporation, the duties and powers of the treasurer are defined. It was directed that he should "have charge of and be responsible for all deeds, contracts and securities, and all moneys belonging to the corporation, from whatever source derived"; and by article 8 it is provided that:

"The finance committee shall aid the treasurer in managing the funds of the corporation. No bill shall be paid without their approval, unless otherwise ordered by the board."

Charge of the securities of the corporation is given to the treasurer, and he is responsible for them; but they are given in his charge to be preserved, not to be sold or disposed of. The obligation to keep is distinct from a right to sell; and imposing upon a trustee or agent charge of and responsibility for securities implies the duty to protect and care for them, inconsistent with a right to sell and dispose of them. The treasurer of such an institution has none of the powers of the active manager of a corporation whose business it is to purchase and sell securities or to transact a general banking business, as in the case of the president or cashier of a bank. Such a corporation is not engaged in business requiring the active interference of its officers, and the cases which refer to the implied power of an executive officer of a bank or trading corporation have no rela-

tion to the officers of such a corporation as the plaintiff. There is nothing in this by-law that could possibly be construed as giving to the treasurer or any of its officers a power to sell or dispose of its securities. There was no evidence that the plaintiff had given any implied authority to sell or dispose of its securities to Lassels. It was not proved that the treasurer had ever sold any of the plaintiff's securities without authority from the corporation, and that such an act had been ratified by the corporation or its directors. None of the facts which justify a finding that the corporation had vested its treasurer with· any apparent authority over these securities were proved, nor did the railroad company rely upon any apparent authority that had been conferred upon the treasurer by virtue of his position, for the railroad company required of the treasurer that he produce a resolution of the board of directors authorizing a transfer of the bonds. This was a recognition by the railroad company, or its transfer agents, of the necessity of an act of the corporation to authorize the transfer of ᵗthe securities. That the railroad company accepted a forged copy of a resolution does not affect this question. The transfer agent correctly assumed that the treasurer, as such, had no power to make the transfer, and required proof that such transfer was authorized by the corporation. The proof that it accepted was spurious and not sufficient for the purpose; but, in the face of this requirement, it certainly cannot be said that the corporation relied in any way upon the authority of the treasurer to make a transfer without corporate action. The plaintiff, therefore, never authorized the transfer of these bonds, and the power of attorney authorizing the transfer was never executed by the plaintiff corporation. It purported to be signed with the name of the corporation by Lassels, as treasurer, but the signature was unauthorized. The railroad company or its transfer agent, however, being unacquainted with the treasurer or his power to act, required, in addition to the presentation to it of the corporate act authorizing the transfer, that the power of attorney should be guarantied by a banking house, a member of which was a member of the New York Stock Exchange; and, upon that power of attorney being thus guarantied, they made the transfer. As between the railroad company and the plaintiff, all of this was without authority from the plaintiff; and the railroad company acting upon these instruments, to which the name of the plaintiff had been forged, and which were not binding upon the plaintiff,, the result was that there never was, as between the plaintiff and the railroad company, any change of ownership or title to the obligation of the railroad company. The plaintiff is still the owner of the obligations and still entitled to enforce them against the railway company. That the railroad company has placed itself in a position that it is required to recognize others as the owner of bonds that it had issued is no concern of the plaintiff, and the plaintiff is entitled to recover from the railway company either the bonds or their value. It is hardly necessary to cite authorities to sustain this proposition, as it seems to me that it only requires a statement of the relation that exists between the plaintiff and the railway company to determine the legal obligations

of the railway company to the plaintiff. The railway company was indebted to the plaintiff for the sum of money represented by the bonds; the plaintiff has never transferred that indebtedness; and the railroad company is still indebted to the plaintiff for the amount due on the bonds and interest.

The only case in this state to which our attention has been called which discusses the legal effect of the registration of coupon bonds is Cooper v. Illinois Central R. Co., 38 App. Div. 22, 57 N. Y. Supp. 925, where the judgment was affirmed by this court upon the opinion of Mr. Hamilton Odell as referee. The action was brought on 12 bonds of the Illinois Central Railroad Company, which contained substantially the same provisions as those contained in the bonds in question. The bonds had been registered by the executor of the estate of Mary T. Wood. There were two trustees of the estate, who held these bonds and other property in trust. One of the trustees obtained possession of the bonds without the knowledge of his co-trustee, presented them to the railroad company, and caused them to be transferred to bearer, sold them, and misappropriated the proceeds; and it was held that the railroad company was liable to the owners of the bonds. This decision, which we approve, upon appeal, sustains that view before expressed as to the relation that existed between the holders of the registered bonds and the corporation that has issued them, and, so far as it goes, is an authority for the plaintiff. The railroad company had knowledge of the fact that these bonds were owned by, and registered in the name of, the plaintiff, and a person representing himself as treasurer of the plaintiff sought to have the bonds transferred. The railroad company accepted the proof submitted as to his actual authority to make the transfer, and, upon the well-recognized rules of agency, the right to make the transfer must stand or fall upon the sufficiency of his authority to make such transfer. If it turned out that the agent has no actual authority, and there was no act of the owner that estopped it from disputing his authority, it would seem to follow that the railroad corporation was responsible for the unauthorized transfer.

It is contended by the railroad company that the removal of the registry was not the proximate cause of the plaintiff's loss. But this, I think, begs the question. The plaintiff was the legal owner of these bonds, and the railroad company was indebted to it for the amount of the bonds. The plaintiff has never assigned or transferred these bonds, or the obligation of the railroad company to it, and that relation still exists. The railroad company, in transferring the bonds upon its books to the bearer, who was the person who presented them for transfer, without the authority of the plaintiff, has, in effect, placed itself in the position that it is liable to the holder of the bonds to whom they have been transferred. But the plaintiff has not authorized that transfer, and, as to the plaintiff, it was an illegal and unauthorized act, and the plaintiff has the right to insist upon the railway company's performing its obligations; and, upon its inability to perform its obligation, in consequence of its own act in having transferred the bonds to third parties, then the plaintiff is entitled to recover the value of the bonds.

The next question presented is the right of the plaintiff against Gibson, as general partner of the firm of Knickerbocker & Co. In this action the plaintiff has based its right to recover upon the fact that Lassels had no authority to transfer these bonds or to sell them, and no authority to receive the proceeds thereof when sold. He therefore never acted as the authorized agent of the plaintiff in his dealing with either the railroad company or Gibson. To impose such a liability, there must be either a contract relation between plaintiff and Gibson, or Gibson must be in such a position that he owes a duty to the plaintiff which he has violated. If the plaintiff had ratified Lassels' act in assuming authority to sell the bonds, Gibson would then be the plaintiff's agent, and responsible to it as such. The plaintiff, however, bases its right to recover against the railroad company upon the fact that Lassels had no authority to sell the bonds, or to transfer them upon the books of the railroad company, and that the railroad company is liable because it acted upon the authority that Lassels assumed when he represented that he had authority to act for the plaintiff in transferring the bonds. This latter position is inconsistent with a claim that Gibson is liable to the plaintiff for his subsequent act in selling the bonds. There was no relation between Gibson and the plaintiff. He had no authority from the plaintiff to act as a broker or to sell the bonds to third parties, and was under no obligation to the plaintiff to protect it. He received certain bonds issued by the railroad company to bearer, and sold them, received the proceeds, and paid them to Lassels. The transfer of the plaintiff's bonds was void, as between it and the railroad company, and plaintiff was never divested of its title to them. It was not plaintiff's bonds that Gibson sold, as plaintiff still owned the obligations of the railroad company. The railroad company issued bonds payable to bearer to Lassels. These Gibson sold for account of Lassels, and accounted to him for the proceeds, but with this transaction I do not see that the plaintiff has anything to do. The fact that Gibson guarantied the genuineness of the plaintiff's signature to the railroad company has an important bearing upon Gibson's responsibility to the company for any damage that it sustained by reason of a lack of authority of Lassels to sign the power of attorney on behalf of the plaintiff, but that act can have no bearing upon the liability of Gibson to the plaintiff, as that guaranty was one to the railroad company, not to the plaintiff. Gibson guarantied the genuineness of the plaintiff's signature to the power of attorney, and in consequence of that guaranty the railroad company acted in relation to the bonds registered in plaintiff's name so as to render it liable to the plaintiff; but, as Gibson was under no duty or obligation to the plaintiff, that act, it seems to me, can impose no obligation upon Gibson in favor of the plaintiff. The complaint does not allege, nor does the court find, any facts to justify the judgment against Gibson in favor of the plaintiff, either upon the ground of negligence or conversion or in replevin; and the failure to allege either a contractual relation between the plaintiff and Gibson, or any neglect of Gibson to perform any duty that he was under to the plaintiff, or that Gibson has received, converted, or detains the plain-

tiff's property, seems to me to preclude the plaintiff from recovering against Gibson.

The third question presented is as to the right of the railroad company to recover the amount that it is compelled to pay to satisfy the claim of the plaintiff against it.  The fact that the railroad company or its transfer agent refused to transfer these bonds unless the genuineness of the plaintiff's signature to the power of attorney was guarantied by a member of the New York Stock Exchange, and that, in compliance with this condition imposed by the transfer agent of the railroad company, and in accordance with the rules of the New York Stock Exchange, Knickerbocker & Co. signed the power of attorney to transfer the bonds, are not disputed; and these facts are found by the court.  The defendant does not claim that the signature of his firm was placed upon this power of attorney for any other reason than to comply with the conditions imposed by the transfer agent of the railroad company and the rule of the stock exchange.  Lassels' signature to the power of attorney was witnessed by Busch, the cashier of Knickerbocker & Co., but the signature of Knickerbocker & Co. to the power of attorney was not placed upon that instrument merely as a witness to Lassels' signature.  It is not disputed but that Gibson understood that the signature of his firm was necessary before the bonds would be transferred.  Busch testified that he knew that Knickerbocker & Co.'s signature to the power of attorney would have to be there before the bonds would be transferred, and that the signature of a firm who had a member in the stock exchange was required before a transfer would be made.  Gibson testified that he signed the name of his firm to the power of attorney, but, when asked whether he understood that it was the custom of the street that the signature of his house upon the power of attorney guarantied its validity, his counsel objected, and that objection was sustained.  It is in evidence that Busch procured the signature of Knickerbocker & Co. upon this power of attorney from Gibson, and did it for the purpose testified to by him, and, relying upon that signature, the railroad company transferred the bonds to bearer; having refused to make such transfer without such a guaranty.  The rule of the stock exchange is:

"An endorsement by a member of the exchange or a firm represented at the exchange, on a certificate is considered a guarantee of the correctness of the signature of the party in whose name the stocks stand."

The transfer agents and Knickerbocker & Co. were members of the exchange, as the transfer agents refused to transfer the bonds without the signature of a stock exchange house.  This was, I think, an express guaranty of the genuineness of the plaintiff's signature to the power of attorney by Knickerbocker & Co.—not the genuineness of Lassels' signature, but the signature of the plaintiff, the owner of the bonds; that it was placed upon this power of attorney for the purpose of guarantying to the transfer agent of the railroad company the genuineness of the plaintiff's signature, which involved a guaranty of the authority of Lassels to sign the power of attorney on behalf of the plaintiff; and that, the railroad company acting upon that guaranty, Gibson was liable to the railroad company for

any damages that it sustained in consequence of the signature of the plaintiff to the power of attorney being unauthorized. Boston & Albany R. Co. v. Richardson, 135 Mass. 473. The case of Starkey v. Bank of England, Appeal Cases (1903) 114, is directly in point.

It would seem to follow, therefore, that Gibson was responsible to the railroad company for any loss that it sustained in consequence of a lack of authority on behalf of Lassels to transfer the bonds, and that the railroad company is entitled to judgment against Gibson for the amount that it is required to pay to the plaintiff.

I think, therefore, the judgment appealed from should be modified by requiring the Chesapeake & Ohio Railway Company to restore to the plaintiff the three bonds which it had illegally transferred, or, in default of the delivery of such bonds to the plaintiff, the plaintiff should have judgment for the value of the bonds, as found by the court, with interest, and that the Chesapeake & Ohio Railway Company is entitled to judgment against the defendant Gibson for the amount that it is required to pay to the plaintiff as the value of the bonds, with interest thereon; and, as modified, the judgment should be affirmed, with costs to the plaintiff.

VAN BRUNT, P. J., concurs in result.

HATCH, J. I concur in the opinion of Mr. Justice INGRAHAM so far as it disposes of the questions arising between the railway company and the plaintiff, and also between the railway company and Gibson. I also think that the plaintiff is entitled to the judgment which it has obtained against Gibson. The form which the trial of the action assumed conferred authority upon the court to award any relief which the facts warranted; and, as it appeared that the defendant Gibson could be made liable for a conversion of the proceeds of the bonds, it was proper for the court to award the judgment against him, which it did. I am therefore for the affirmance of the judgment in its entirety.

The judgment should be affirmed, with costs.

PATTERSON and LAUGHLIN, JJ. We concur in the opinion of Mr. Justice INGRAHAM, except so far as the liability of the defendant Gibson to the plaintiff is concerned, and with respect to that we concur in the opinion of Mr. Justice HATCH.