(115 App. Div. 74)

### BROOKLYN HEIGHTS REALTY CO. v. KURTZ et al.

(Supreme Court, Appellate Division, Second Department.   October 12, 1906.)

1. CORPORATIONS—ACCOUNTING BY DIRECTORS.

A corporation may require directors to account for illegal profits in making a sale to the corporation without first offering to return the property.

2. SAME—ISSUE OF STOCK.

It is a violation of Stock Corporation Law, § 42, Laws 1892, p. 1835, c. 688, providing that no corporation shall issue stock except for money, labor done, or property actually received, to issue stock and deposit it with a trust company so that when sales thereof are made for the corporation, deliveries can be made by the trust company.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 444–446.]

3. SAME—ACTION AGAINST DIRECTORS—PARTIES.

It is no defense to an action by a corporation against directors to require them to account for fraudulent transactions, that others equally guilty are not made parties.

4. SAME—CONTRACTS.

A contract by a corporation, organized to build and operate a hotel, with a practical hotel man of ability and reputation, made eight months before it was contemplated that the hotel would be completed, employing him as manager for a term of years, he to receive a certain salary till the time when it was contemplated the hotel would be completed, and a larger amount thereafter, is valid, in the absence of bad faith.

Miller and Jenks, JJ., dissenting.

Appeal from Special Term, Kings County.

Action by the Brooklyn Heights Realty Company against William K. Kurtz and others. From an interlocutory judgment, certain defendants appeal. Reversed in part.

The opinion of Kelly, J., at Special Term, is as follows:

The plaintiff corporation brings this suit in equity against the defendants, formerly members of its board of directors, and against the defendants McCormick and Peacock, claiming that the defendant directors have mismanaged its affairs, that they have united in an attempt to cheat and defraud the plaintiff, its stockholders and creditors, by voting to purchase real estate for the corporation from one of their number, the defendant Kurtz, at a price largely in excess of its true value, and $61,000 in excess of the amount for which Kurtz purchased the identical property from the defendant Peed, another member of the board. The plaintiff alleges that all the defendant directors connived and consented in the scheme. It is charged further that the directors voted to pay Kurtz the sum of $7,600, although the plaintiff corporation did not owe him the money, and that by improvident and wasteful contracts they dissipated the capital stock and funds of the plaintiff, by reason of which it was obliged to suspend its operations and has lost large amounts of money. It is charged that the defendants McCormick and Peacock were parties to the fraudulent transactions, and that some of the plaintiff's capital stock was wrongfully issued to and still stands in the names of the two defendants last named.

The complaint demands judgment that the agreement and resolutions purporting to bind the plaintiff to pay the alleged unlawful profit to the defendant Kurtz, are void and inoperative; that all certificates for plaintiff's capital stock now outstanding and issued in pursuance of the alleged illegal action be called in and canceled and declared void; that a contract made with the defendant director Knott be set aside; and that the defendant directors account for their official conduct and restore and make good to the plaintiff all loss suffered by their illegal acts; and that they account for all moneys and property of the plaintiff had and received by them.

The suit is brought on the theory that so far as the management of the corporate property is concerned, the directors are to be treated as trustees, and that they are accountable in that capacity to the corporation (Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667; Mabon v. Miller, 81 App. Div. 10, 80 N. Y. Supp. 979), and plaintiff relies on section 1781 of the Code of Civil Procedure which provides that: "An action may be maintained against one or more trustees, directors, managers or other officers of a corporation, to procure a judgment for the following purposes: (1) Compelling the defendants to account for their official conduct in the management and disposition of the funds and property committed to their charge."

The defendants deny bad faith and intention to defraud. They allege their acts were lawful and proper; that the proceedings complained of by the plaintiff were ratified at a meeting of the stockholders. Certain of the directors aver that they had no financial interest in the plaintiff, or knowledge of the transactions complained of. Some of them claim that there is a defect of parties defendant because other directors who were as guilty as themselves have not been sued. It is alleged that the plaintiff corporation has no standing in equity to maintain this suit because it does not offer to surrender the real estate for which it complains it has been overcharged, but seeks to hold the advantageous part of the bargain, rejecting only what it claims is disadvantageous. And the defendant directors allege that the proof is insufficient to charge them with fraud and conspiracy; that the only legitimate criticism on their proceedings, if they are subject to criticism at all, is that they were careless and negligent; that at most the plaintiff makes out a case for an action at law, and that they cannot be compelled to account in equity.

I have read over the testimony and the briefs submitted by the respective counsel. Charges of fraud are serious matters. A defendant should not be found guilty of fraud on anything but the most cogent proof. There is no dispute that the defendant Kurtz, the vice president of the corporation, purchased the property in Brooklyn from the defendant Peed, another director, for $189,000, and turned it over to his own corporation at once for $250,000, the deed being made from Peed to McCormick and from McCormick to the company. The resolution authorizing the purchase was adopted at a meeting of the board of directors on September 27, 1902, at which the defendant directors Breslin, Jacobus, Kurtz, Peed, Bascom, Brown, and Austin were present. It was offered by Mr. Austin, and the minutes recite that each member of the board present voted for it. Jacobus and Brown say they were directors in name only, the first acting at Mr. Breslin's request, and the second to oblige Mr. Austin. Vice president Kurtz says he told Breslin, the president, of his profit. Mr. Austin was the counsel for the company and the secretary and attended to the closing of the transaction when the deeds were passed. All of the directors deny that they knew anything of Mr. Kurtz's profit—even Mr. Peed—whose ignorance of the fact is almost inconceivable, save on account of his advanced age. Mr. Kurtz claims that the corporation cannot now call him to account, that the stockholders ratified the transaction. That it was illegal and a breach of trust goes without saying. There were other stockholders than the directors. Even the directors will not admit they knew of the details of the transaction. I have no hesitation in finding that the defendant Kurtz, the vice president and a director in the company, was guilty of a gross breach of trust, and on the proof here he will not be heard as against a demand that he account for the money and stock illegally taken, to say that the corporation, or those interested in it, are estopped from demanding relief against such a violation of his trusteeship. It will take far greater evidence of ratification than is suggested here to lead the court to refuse the demand for relief. The meeting at which the stockholders are said to have ratified this breach of faith was no meeting, it was not legally called, all of the stock was not represented, and in the end I fail to find any resolution ratifying this illegal profit. Nor is the claim that the corporation should first offer to return the property before calling for an account, available to a trustee charged with breach of his obligations, with exacting illegal profits from those who had a right to look to him for protection. I do not interpret the decision in Insurance Press v. Montauk Fire, etc., Co. (Sup.) 93 N. Y. Supp. 134, cited by defendant Kurtz, as changing the rule prevailing for so many years, that a man must not be permitted to take advantage of his own wrongdoing or to allow corporate directors to reap dishonest profits from the corporation by the method proved here. As a director and vice president, he was charged with the duty of purchasing the property for the corporation on the best terms obtainable. He did purchase it, but by using an intermediary he put $61,000 into his own pocket. And he now says in effect to the corporation: "You must take the property allowing me to retain my illegal profit, or, if you object, give up the land which you desire to purchase and directed me to buy as your vice president, director and trustee." On the facts proved in this case this claim will not be allowed, it is opposed to common sense and elementary principles of fair dealing. And in the same way, the charge that Mr. Kurtz acted improperly in the matter of the $7,600 payment is, I think, sustained as to most if not all of the amount named. This is not a payment of legitimate expenses connected with the formation of a corporation. It is a deliberate taking from the treasury of this company by its vice president of money for which the company was not liable. I have no difficulty in disposing of this case as far as the defendant Kurtz is concerned. I regret that some of his fellow directors seem to me to be so involved in these illegal payments that notwithstanding their denials of knowledge of his wrongdoing, I am constrained to find them also guilty of breach of trust in dealing with the assets of this corporation. As to Jacobus and Brown, while they did wrong in allowing themselves to be used as tools or so called "dummy" directors, voting for the illegal payments to which I have referred, I do not think they knew of the fraud perpetrated. They were lax in the performance

of their duties, their action is deserving of condemnation, but I cannot find on the facts that they knew enough of the affairs of the company to adjudge them guilty of actual misfeasance. I have come to the conclusion that Knott's contract was not such as to warrant a judgment against him. I think in a hotel enterprise such as this an arrangement of the kind made with him cannot be said to be a breach of faith or necessarily subversive of the interests of the corporation or its stockholders. While it may have been unwise to begin paying him before the hotel was actually constructed, I think it was a matter fairly within the discretion of the directors, and his connection with the board and the reasons for electing him a director are apparent. I understand that he consents that the contract be canceled and that all claims on his part against the corporation are waived. Nor is there, in my opinion, proof sufficient to hold the defendant Shaw to account.

As to the defendant directors Breslin, Peed, Bascom, and Austin, I must find them chargeable with knowledge of Kurtz's wrongdoing. They were in the corporation from the outset. A few months before the purchase of the property at $250,000 they had voted to purchase the same property, with one or two adjoining houses, for $400,000. The value of the adjoining property omitted on the final transaction in no way warranted the difference of $150,000, and the record shows that at the meeting in May, 1902, Mr. Bascom offered a resolution which recites that the property has been offered to the company by William K. Kurtz. I do not think it will serve any useful purpose to go over the evidence in detail which must convince any one that these gentlemen knew of the transaction, knew that their fellow director, Kurtz, was selling to the company property which he had acquired from another director, Peed, and that they could not have been ignorant of the details of the transaction. To find otherwise would be to say they were devoid of ordinary judgment and reasoning powers. The evidence that certain gentlemen supposed to be familiar with property values in Brooklyn stated that the price paid by the company was reasonable, is not substantiated by the appearance of any of the persons named on the witness stand. I think the directors Kurtz, Breslin, Peed, Bascom, and Austin should be held to account to the corporation, and that McCormick and Peacock, in whose names certain shares of the plaintiff's stock have been issued, should also account for the property so transferred to them. A most unusual, and to my mind, illegal method of dealing with corporate stock was disclosed at the trial. Peacock was employed by the Board of Directors to obtain subscriptions to plaintiff's capital stock on a commission paid by the company. To facilitate this questionable method a number of stock certificates were prepared in the names of various persons, Peacock and McCormick among the rest. The certificates were made out in various round amounts, and regularly issued and certified by the company's officers, indorsed in blank by the so-called holders, and deposited with a trust company, so that when sales were accomplished deliveries could be made by the trust company. I think the entire transaction was illegal and violated the provisions of Stock Corporation Law, § 42, Laws, 1892, p. 1835, c. 688, which provides that no corporation shall issue stock except for money, labor done, or property actually received for the use and lawful purposes of the corporation.

I have not overlooked the claim advanced by the defendants, that other directors who they say are equally guilty have been omitted as parties defendant. I think that all of the directors who violated their obligations should be joined as defendants, but, in my opinion, the defendants here cannot urge their absence from the suit as a defense.

As to the extent of the liability of the defendants against whom the interlocutory judgment must be entered, that will depend on the facts developed on an accounting. The whereabouts of the stock issued to the defendant Kurtz on his account can be there ascertained, the exact loss to the corporation can be settled. If any part of the $7,600 payment was legitimate, the defendant may show it on the accounting. If the stock issued on account of the illegal profit is returned, the appropriate credits can be given. The complaint should be dismissed as to the defendants Jacobus, Brown, Shaw, and Knott without costs, and there should be judgment directing the other defendants to account before a referee to be named.

Prepare decision, findings, and judgment accordingly.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Robert C. McCormick, for appellant William K. Kurtz.

George C. Austin, for appellants Breslin and Austin.

Benjamin N. Cardozo (Benjamin B. McAlpin, on the brief), for appellant Bascom.

William H. Ford, for appellant Knott.

John Hill Morgan, for respondent.

HOOKER, J.   In this action by the plaintiff corporation against its former directors for an accounting for waste, I am entirely satisfied that the reasons assigned by the learned Special Term in support of the judgment in plaintiff's favor and the judgment itself were proper, and the latter should be affirmed, except as to the defendant Clarence B. Knott.   The judgment provides that the complaint be dismissed without costs against him, provided he cancel his contract with the plaintiff and waive all claim for unpaid salary against it; that he retain the $2,800 theretofore received by him on account of services as payment therefor; otherwise, that his contract be declared canceled and he account to the plaintiff.   From the judgment which contains this provision, defendant Knott has appealed.

The corporation was formed for the purpose of acquiring property and building and operating a hotel thereon.   All of the wrongful acts complained of by the plaintiff, except the execution of the contract with Knott, were done by the defendants as directors and individuals long prior to the time that Knott became a member of the board of directors.   For a period of several months before he was elected to the directorate, he had been consulted in respect to the many details necessary to be observed incident to the erection of the hotel.   He was a practical hotel man of much ability and wide reputation.   Prior to May 12, 1903, a proposed contract had been drawn up between the corporation and Knott, in which it was contemplated that the latter should render all necessary services in relation to the erection of the hotel, and that he should be employed as manager thereof for a period of 10 years after it had been completed.   It seemed to be contemplated in good faith when the contract was made that the hotel should be completed by January 1, 1904.   Knott was to be paid $400 a month up to that time, and until the expiration of 10 years after its opening 10 per cent. of the profits of the hotel, with a guaranty that his share of these profits should amount to not less than $7,500 per year.   The contract was discussed at the meeting on May 12, 1903, and the officers were directed to execute it.   This was done, and thereafter at the same meeting Knott was elected a director.   The hotel has never been completed.   At the time of the trial, on the 21st day of March, 1905, Knott had been paid the sum of $2,800 on account of the contract.   An agreement of this kind with a practical hotel man, made and executed within eight months of the date it was expected the hotel would be completed, was not unusual, and certainly not a breach of the faith the directors owed the stockholders.   Bona fide on the part of Knott is strongly shown by the circumstance that during the period he was to receive pay before the

building was to be completed, he laid out and expended in the interest of the corporation several hundred dollars personally. Nothing in the evidence points to any wrongful intent or act on his part, either in respect to the formation of the contract or in respect to the delay in completing the hotel. The objection that the plaintiff would be mulcted in the sum of $7,500 a year, the payment of salary under this contract, until the expiration of 10 years after the hotel is completed, cannot, as a practical proposition in this case, obtain, for the reason that, at the close of the evidence, the defendant Knott consented to a judgment canceling his contract with the corporation and to a withdrawal of his suit for salary then pending, provided the plaintiff would allow a judgment against it for the amount of salary due Knott at that date. This offer is reiterated on the presentation of his appeal before this court. There may, of course, be defenses to Knott's action against the corporation. On that subject we are not advised. But, prima facie, he has a property right in the benefits he may have acquired under the contract, and we may not in this action adjudge that he has forfeited them, in the absence of proof that he acquired them through a breach of the trust he owed to the stockholders of the corporation.

The judgment should be reversed as to Knott, and the complaint dismissed against him, with costs against the plaintiff. In other respects the judgment should be affirmed, with costs.

All concur, except MILLER and JENKS, JJ., who dissent.

MILLER, J. (dissenting). Assuming that the judgment is in other respects supported by the findings, it is at least inconsistent in that it adjudges the issue of the so-called collateral stock illegal and void, and validates such stock in the hands of the defendant Peed, who had full knowledge of all the facts respecting its issue, is adjudged guilty of misconduct in respect thereto, and received it, not from the corporation, but from the defendant Kurtz, under an agreement that said Kurtz would repurchase the same within 90 days.