MIDWOOD PARK CO. v. BAKER et al.

(Supreme Court, Special Term, Kings County. July, 1910.)

1. CORPORATIONS (§ 30*)—FRAUD OF PROMOTERS—UNDISCLOSED PROFITS.

Where persons holding a mere option on land organize a corporation to buy it, have it deeded to a dummy, who gives a purchase-money mortgage, and also a mortgage for the benefit of such promoters, and then have it deeded to the corporation, such second mortgage representing profits of the promoters, undisclosed to the corporation, is a fraud on it, which it may have set aside.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

2. CORPORATIONS (§ 30*)—FRAUD OF PROMOTERS—UNDISCLOSED.

Where, in the purchase of land by a corporation, its promoters obtain a secret, undisclosed profit, represented by a mortgage which had been put on it, it is no reason for not avoiding the mortgage as a fraud on the corporation that the property, with the mortgage on it, was worth the amount paid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec.. Dig. § 30.*]

3. MORTGAGES (§ 257*) — ASSIGNMENT — EQUITIES AND DEFENSES BETWEEN ORIGINAL PARTIES.

Even a bona fide assignee of nonnegotiable bonds and mortgage security takes subject to equities and defenses existing between the original parties at the time of the transfer.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 682–687; Dec. Dig. § 257.*]

4. BILLS AND NOTES (§ 497*)—BONA FIDE PURCHASER—BURDEN OF PROOF.

Under Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 98, fraud in the inception of such an instrument being shown, a transferee holder has the burden of proving the facts showing him a holder in due course.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1675–1687; Dec. Dig. § 497.*]

Action by the Midwood Park Company against Bertha G. McLaughlin Baker, impleaded with the Kouwenhoven Realty & Improvement Company and others. Judgment for plaintiff, and certain bonds and mortgage security held invalid.

See, also, 127 N. Y. Supp. 48, 1132.

Augustus Van Wyck, for plaintiff.

Dessar & Ridgway, Herbert R. Limburg, and George C. Lay, for defendant Kouwenhoven Co.

George E. Cogswell, for defendant Title Guarantee & Trust Co.

KELLY, J. In this case I reach the following conclusions: The plaintiff's mortgage for $356,941.98 is valid and binding, and the plaintiff is entitled to a decree of foreclosure and sale. The mortgage

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for $1,940, covering McLaughlin's commissions, is also valid and a lien upon the premises. The mortgage given to the Title Guarantee & Trust Company, as trustee, to secure the 202 bonds of $1,000 each, I am compelled to hold void and invalid as against the owner of the property, as representing secret illegal profits sought to be obtained by Messrs. McLaughlin and Herd from the corporation and its stockholders, to whom they occupy a fiduciary relation.

The defendant Kouwenhoven Company, the owner of the land, attacks the plaintiff's mortgage as well as the so-called second mortgage for $202,000 as fraudulent, alleging that it was part of a scheme of McLaughlin and Herd to defraud the company and its stockholders, but there is an entire failure of proof to substantiate the owner's claims. While it is true that McLaughlin and Herd defrauded the company and its stockholders, their dishonest maneuvers took effect after the title passed from the plaintiff, and there is no evidence that the plaintiff took part in them. It is true that plaintiff was endeavoring to sell this land for some time prior to the sale to the Kouwenhoven Company. And the plaintiff may have been willing to sell at a lower figure than $2,750 per acre at some time, but when we come down to the date of the option given to McLaughlin and Herd—October 14, 1905, because it was nothing but an option—the price then fixed was $2,750 an acre, and that was the price subsequently paid to the plaintiff, and of which the amount represented by the first mortgage now in foreclosure was part. There is nothing exorbitant about the price, there is nothing connecting the president of the plaintiff with the subsequent manipulations of the property, and nothing to show that the plaintiff took any part of the illegal profits sought by Herd and McLaughlin from the defendant company and its stockholders. The plaintiff company agreed to pay McLaughlin commissions for selling the property, and the commission is represented by the $1,940 mortgage, deducted from the consideration paid, put into the form of a mortgage and assigned to some nominee of McLaughlin's. This was, to be sure, an unusual and peculiar way to pay the commission. But, while McLaughlin and Herd were united in their scheme to despoil the Cincinnati parties, it is equally apparent that Mr. McLaughlin was endeavoring to get the better of his colleague, Mr. Herd. I do not think this is any concern of the defendant Kouwenhoven Company. The price agreed to be paid for the property, and which was paid, was $2,750 an acre. Up to that amount the debt is a valid debt.

[1] But, as to the so-called trust mortgage given to secure the $202,000 in bonds, I think that was fraudulent, because it represents an illegal, concealed profit, which McLaughlin and Herd, the promoters of the Kouwenhoven Company, the men who organized it, procured subscriptions to its stock, and managed the matter of the transfer of plaintiff's property to it, sought to obtain from persons to whom they were bound to exercise good faith, as to whom McLaughlin and Herd occupied a fiduciary relation. This trust mortgage is for $202,-102.80, and this amount represents exactly the illegal profit sought to be taken by McLaughlin and Herd. There were two tracts of land in the transaction, the land conveyed to the Kouwenhoven Company

by the plaintiff, and another tract conveyed by the Brooklyn Realty & Trading Company, known as the "Wyckoff tract." Both parcels were turned over to the syndicate by McLaughlin and Herd for $822,045, but they paid for the land under the option; for the plaintiff's land $485,207.25; for the Wyckoff tract $134,734.95—$519,942.20. The difference, $202,102.80, is the amount of the so-called trust mortgage to the cent. So that there is no difficulty in ascertaining what this claim now advanced means.

The vendor here was the Midwood Park Company, the plaintiff. The purchaser was the Kouwenhoven Company, the defendant. Courts of equity will not be deceived by the artifices, devices, and empty forms which may be resorted to by wrongdoers to cover up their illegalities. It is the duty of a court of equity to brush aside all these shams and get at the real facts. The fact that the deed was made by the plaintiff to McLaughlin's sister and the property turned over by her to the corporation after she had placed upon it the genuine purchase-money mortgage held by the plaintiff, and the bogus purchase-money mortgage to secure the $202,000 illegitimate profit, in no way interferes with the power of a court of equity to right a wrong. The minutes of the incorporators and directors of the Kouwenhoven Company at the time of its organization, the exact phraseology of the resolutions approving the manipulations of Messrs. McLaughlin and Herd, by which it was sought to put $202,000 into their pockets without the knowledge of their associates, and without the expenditure of a dollar on their part, are of no avail. Equity cuts through all this legerdemain, and lays bare the facts. The men who were adopting these resolutions, who were voting as incorporators and directors, who were in control of the corporation at its birth, and who sought to burden its existence with this unlawful debt were creatures of McLaughlin and Herd—office boys, clerks, stenographers, Herd's chauffeur, and his brother automobile dealer. Their solemn declarations amount to nothing; and, when the time came to let in the men from the West to view the legal entity which had been created for them, with their imagination stimulated by the recent profits realized by the two masters of finance on the Coney Island avenue property, even then McLaughlin and Herd were practically in control of the board of directors. The transaction does not reflect credit on the acumen of these gentlemen from Cincinnati. They were, as argued with much zeal by the learned counsel representing these bonds, of full age, men of affairs, members of the legal profession—two of them were judges—and still it is the regrettable fact that they allowed the glamour of McLaughlin and Herd's methods of finance to blind them. The wool was pulled over their eyes, and they were bled to the extent of $202,000 as effectually as if they belonged in the class of the inexperienced subscribers to the enterprise, of whom there are many, who had no voice in the management, whose only part in the transaction was their subscription to and payment for the capital stock. The evidence shows a very crude and old fashioned method resorted to by McLaughlin and Herd to whet the appetite of the Western men. Immediately before the main deal, they invested money through these gentlemen in land in the Parkville section, realizing

quick and substantial profits in the purchase and sale of the property—one transaction followed another with astonishing expedition —but again, in a court of justice, we get down to the facts, and find that McLaughlin was buying his own land and selling it to himself, showing enticing results, but there was always a string on the profits, and they finally went into the bag in the Kouwenhoven deal. I do not think that these defendants should be allowed to keep them.

That McLaughlin and Herd occupied a fiduciary relation to the stockholders in the Kouwenhoven Company cannot, it seems to me, be doubted on the evidence in this case. Of course, if they were vendors selling this property to the corporation, as man to man, they had a right to make as much profit as they could. But this was not the case. The so-called contract of October 14, 1905, under which this property was obtained from the plaintiff, was simply an option. It could·not be enforced against them because by its terms, if they defaulted, their payments already made were forfeited as liquidated damages, and the agreement became null and void. With this agreement in their possession, but canceling its terms, they at once organized a "syndicate" to purchase the property at $3,750 an acre. McLaughlin headed the syndicate agreement with a subscription of $160,-000, followed by Charles W. Baker, who was Mr. Herd's partner, who subscribed for $80,000, and then came subscriptions in $10,000 and $20,000 blocks to a total of $320,000. These syndicate subscriptions were the nucleus of the Kouwenhoven corporation. McLaughlin and Herd founded the corporation in the spring of 1906, the certificate of incorporation was filed March 23, 1906, but the first meeting of the incorporation was not held until May 18, when the property was transferred by the Midwood Company, the plaintiff. The only actual cash paid on the transfer came from the Western subscribers. The Midwood Company conveyed to McLaughlin's sister May 3, 1906. She made the plaintiff's purchase-money mortgage, also the bogus mortgage to the trust company to secure the $202,000 bonds, which, while it is dated May 1, 1906, was not acknowledged until May 3, 1906. The bonds are described as "balance of purchase-money real estate mortgage gold bonds," an attractive, but false, statement. And on the same day, May 3d, she transferred the property to the Kouwenhoven Company; so I repeat the sale in equity was by the Midwood Park Company to the Kouwenhoven Company. McLaughlin's sister was used simply to enable the conspirators to create this fraudulent issue of bonds. The syndicate unloaded the property on the Kouwenhoven Company at $5,000 an acre. I do not pass on the question whether they are accountable to the corporation and its innocent shareholders for this profit of $1,250 an acre, the difference between $3,-750, at which they bought, and $5,000, which the corporation paid. That matter is for other courts or other litigation. The fact that the syndicate may have dealt dishonestly with the corporation is no defense for McLaughlin and Herd to the corporation's claim that they took an unlawful profit of $1,000 an acre, represented by these bonds. The corporation is here defending itself against an unlawful claim. The rights of stockholders who never heard of the syndicate are before the court, and the members of the syndicate may adjust

their own internal difference outside this litigation. McLaughlin's subscription of $160,000 to the syndicate was a sham. He never paid in a dollar. His associate, Mr. Herd, agreed to relieve him of his obligation, but without communicating the fact to the other subscribers. It is no defense for one accused of fraud to charge that other parties have defrauded the complainant. It is no defense to say that Judge MacNeill was negligent, or that he should have discovered the fraud. It is no defense to say that MacNeill knew of the unlawful profit. I do not believe that he did. It is inconceivable that any sane man would have countenanced such an enormous and unconscionable profit to McLaughlin and Herd, who had only an option on the property, and who were simply using the money subscribed on the syndicate to make the cash payments. [2] It is no defense to say that the corporation received property actually worth $5,000 an acre. A trustee cannot answer a charge of breach of trust by a claim that a corporation has in fact made a profit. Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152, 76 N. E. 1075; Kavanaugh v. Commonwealth Trust Co., 181 N. Y. 121, 73 N. E. 562. I think the corporation has a right to contest these questions in this suit. The trustee is before the court insisting that the trust deed is a valid second mortgage. The court must pass upon the question here. Bergen v. Carman, 79 N. Y. 146; Commercial Trust Co. v. Peck, 135 App. Div. 732, 119 N. Y. Supp. 946; Russell Hardware & I. M. Co. v. Utica D. F. Co., 195 N. Y. 54, 87 N. E. 788. The corporation is directly affected by this invalid trust deed and by the unlawful demand credited against it by these outstanding bonds. The individual stockholders could not raise these questions without first demanding that the corporation assert their rights. Greaves v. Gouge, 69 N. Y. 154; Brooklyn Heights R. R. v. Kurtz, 115 App. Div. 74, 100 N. Y. Supp. 723; Colton Improvement Co. v. Richter, 26 Misc. Rep. 26, 55 N. Y. Supp. 486; New Sombrero Phosphate Co. v. Erlanger, L. R. 5, Ch. D. 112. That McLaughlin and Herd occupied a fiduciary relation to the company and its stockholders and that they could not retain profits without full disclosure to their associates has been adjudicated in repeated decisions in this state. Dickerman v. Northern Trust Co., 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423; Brewster v. Hatch, 122 N. Y. 349, 25 N. E. 505, 19 Am. St. Rep. 498. "It is only where the promoter informs every subscriber or the director informs every fellow director and stockholder that he is interested and of the amount of the profit he expects to make on a sale to the corporation that the promoter or director will be permitted to make or retain a profit on such sale; and the burden is on him to show that he took no advantage of his fellow subscribers." Colton Improvement Co. v. Richter, Special Term, Erie County, Laughlin, J., 26 Misc. Rep. 26, 55 N. Y. Supp. 486, and cases cited. And the corporation may defend against the holders of the bonds accrued by this mortgage.

[3] The bonds are not negotiable by their terms. They are not payable to order or to bearer. Negotiable Instruments Law, § 27; Clarkson Home v. C. & O. R. R., 92 App. Div. 491, 87 N. Y. Supp. 348. And even a bona fide assignee of a bond and mortgage for value takes it subject to the equities and defenses existing between the orig-

inal parties at the time of the transfer.  Bush v. Lathrop, 22 N. Y. 535; Stevenson Brew. Co. v. Ida, 155 N. Y. 224, 49 N. E. 677; Merchants' Bank v. Weill, 163 N. Y. 486, 57 N. E. 749, 79 Am. St. Rep. 605.  Only one holder of these bonds took the witness stand, Mr. Edward Bailey, a banker of Harrisburg, and it is very evident from his testimony that he was put upon inquiry concerning these securities.  He says he took some of the bonds as collateral on loans made to McLaughlin by other persons which were overdue, and which he, Bailey, took up.  He discounted the notes upon a 10 per cent. basis. The bonds were stated to be purchase-money mortgage bonds executed by Bertha G. McLaughlin, presumably the grantee of the property, else why should she make the bond, and yet $101,000 face value of her own bonds were registered in her name.  A most peculiar situation and one which certainly put the party taking them on inquiry.  No other holder of any of these bonds took the witness stand or testified to facts showing purchase for value or in due course.  Fraud having been shown in their inception, the burden was on the holder to prove the facts.  Negotiable Instruments Law, § 98.  These bonds upon their face when found registered in the name of the party who executed them were suspicious and invited investigation, and it is hard to believe that any investor of experience could possibly have taken them in ignorance of their history.

I must therefore find this issue of bonds and the mortgage given to secure them invalid as to the defendant Kouwenhoven Company.

The plaintiff is entitled to judgment for foreclosure and sale, with costs, and an extra allowance.