HOME TRUST CO. OF NEW YORK v. BAUCHENS et al.

(Supreme Court, Appellate Division, Second Department.   June 7, 1912.)

CORPORATIONS (§ 401*)—CONTROL—SALE OF LAND—SECRET PROFITS.

Certain persons controlling the J. Realty Company conceived the idea of organizing defendant Y. Realty Company and selling certain real property to it at a profit.   In accordance therewith the J. Company agreed to sell the land to the Y. Company for $182,360, payable by its assuming a mortgage of $92,360 and by paying $45,000, the receipt of which was acknowledged, and $45,000 more on closing the deal.   The J. Company thereupon procured an agreement to purchase the land from its then owner for $136,770, and later procured a conveyance to the Y. Company through an intermediary, subject to two mortgages, one to the original owner for $51,818.90, and one to J. Company for $40,541.10.   The persons controlling the J. Company and inducing the sale acted for both the J. and the Y. Companies, and brought in new stockholders of the Y. Company for that purpose.   *Held*, that the transaction was not fraudulent, and that the mortgage for $40,541.10, though representing the apparent profit made by the J. Company, was a valid lien on the property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1363, 1364, 1595; Dec. Dig. § 401.*]

Appeal from Special Term, Nassau County.

Action by the Home Trust Company of New York against Rose A. Bauchens and the Yonkers-Garden City Realty Company.   From a judgment for plaintiff, defendant Realty Company appeals.   Reversed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

John T. Delaney, of New York City, for appellant.
John H. Corwin, of New York City, for respondent.

THOMAS, J.   The Jackson Bros. Realty Company, by instrument dated January 5, 1909, agreed to sell certain land to the Yonkers-Garden City Realty Company for $182,360, payable by assuming the mortgage of $92,360 and by paying $45,000, whereof receipt is acknowledged, and $45,000 upon closing on May 10th.   On February 4, 1909, the Canadian Realty Company agreed to convey the land to the Jackson Realty Company for $136,770.   By deed dated May 10, acknowledged July 20, and recorded August 6, 1909, the Canadian Realty Company, for an expressed consideration of $1, conveyed the land to one Rose A. Bauchens, and the latter, by deed dated and acknowledged December 7, 1909, and recorded December 27, 1909, conveyed the land to the Yonkers-Garden City Realty Company, subject to two mortgages, one to the Canadian Realty Company for $51,818.90, and one to the Jackson Bros. Realty Company for $40,-541.10.   As the actual consideration paid by the Jackson Company was $136,770, it made an apparent profit of $45,590.   On January 24, 1910, the Jackson Bros. Realty Company assigned the bond and mortgage to the plaintiff, who, in this action to foreclose, was met by the defense that the mortgage represented a secret profit to the

Jackson Company in fraud of the Yonkers Company, and the trial justice so found.

But the further finding is that the plaintiff, who bought the mortgage at a discount of 25 per cent., did so in good faith, relying on a written representation that the bond and mortgage were a valid and existing lien for the sum of $40,541.10, and that there was no defense thereto. The representation is in the form of an affidavit made by Clark and Gregg, severally and treasurer and secretary of the appellant, and signed by such persons with the name of their office added, and sealed with the defendant's corporate seal. The facts as found are that the Jackson Company was controlled by persons who organized and controlled the appellant, and that such persons acting for both companies, effected the sale of the land to the appellant, and therefore brought in new stockholders without advising them of such sale, with such secret profit to themselves. The subscription to the stock, which brought in new stockholders, states that the Yonkers Company shall purchase of Jackson Bros. Realty Company the land for the price and upon the very terms for which it was bought. There is no evidence that the land was bought by the Jackson Company for the Yonkers Company, that the latter was cheated by any representation as to its value, nor is it proven that it was sold at an unfair price. As the appellant bought of the Jackson Company, and persons subscribed for the stock to do that very thing, they cannot complain that their vendor made a profit.

There is evidence that all the subscribers knew that it was a sale from one company to another, except one Lathrop seems to deny doubtfully such knowledge. At least, there is no other denying knowledge. The plain facts are that the Jackson Company bought the land, procured a conveyance to Bauchens, who executed the mortgage in question to the Jackson Company, and then the Jackson Company organized a company to buy the land for $182,320, but paid a part thereof by taking title subject to two mortgages, including the one in question. If there was any fraud, the conveyance to and by Bauchens does not eliminate it, as she was a mere instrumentality used by the Jackson Company. But there was no fraud, for the agreement was to buy openly for terms that included the amount of the mortgage, and the subscription to the stock was for the very purpose of purchasing of the Jackson Bros. Realty Company the land for $182,360, or $4,000 per acre. Now, the defendant, moved by some of its stockholders, would change the contract and subscription by decreasing the purchase price by the amount of the mortgage.

Assume that there had been no mortgage, and in lieu thereof money had been paid, or the appellant had given back a mortgage for such portion of the purchase price; the purchaser could not recover back the payment or defeat its mortgage upon the theory that it did not purchase of the Jackson Company and that the latter could make no profit. The appellant bought of the Jackson Company for a price. It deducted this and the other mortgage from the purchase price. It put on the public records its deed showing what it had done, which recited that it took title subject to the mortgages, a statement that

harmonizes with the whole history of the transaction. It should not be allowed to dispute its plain contract, or the lien of the mortgage subject to which it purchased. Jones on Mortgages, § 744; Freeman v. Auld, 44 N. Y. 50; Bennett v. Bates, 94 N. Y. 354; Purdy v. Coar, 109 N. Y. 448, 17 N. E. 352, 4 Am. St. Rep. 491; Howard v. Robbins, 170 N. Y. 498, 63 N. E. 530.

The two mortgages amount to $92,360, which is the exact amount of mortgages for which the subscription agreement, and the agreement to purchase provide. The whole transaction is a written one, that advised any person interesting himself what relation the Jackson Company bore to the transaction, what was to be paid, and how it was to be paid. In such regard it differs from Midwood Park Co. v. Baker, 128 N. Y. Supp. 954, affirmed in this court 144 App. Div. 939, 129 N. Y. Supp. 1135, in the essential fact that the persons who obtained the secret profit in the form of a mortgage did not, in procuring the money with which the purchases of land were made, hold themselves out as vendors, for in such case, as the learned trial justice said, "they had a right to make as much profit as they could." They, or those who represented them, apparently went into the adventure on equal terms with the contributors of the money. It is not so here. The Jackson Company was the stipulated vendor, and the purchase price was fixed.

Under these circumstances, plaintiff was entitled to recover; but inasmuch as there is a finding that the mortgage was fraudulent, although such finding is not supported by the evidence, it seems necessary to reverse the judgment and grant a new trial, inasmuch as a majority of the court considers that the defendant appellant is not estopped by the representation made by its secretary and treasurer.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur.